Henry C. REGET, Plaintiff-Appellant,†

v.

Norma Zelazo PAIGE, Samuel Paige, individually and
as Trustee under the Maya Zelazo 1981 Trust, the
Daniel Zelazo 1981 Trust, and the Nathaniel Zelazo
Grandchildren's Trust, Holly Russek, Michael Russek,
individually and as Custodian for Evan Russek under
the Wisconsin Uniform Gifts to Minors Act, Annette
Zelazo Middleton, f/k/a Annette Zelazo, individually
and as Trustee for the Ronald Zelazo 1984 Trust,
Nathaniel K. Zelazo, individually and as Trustee with
his successors in trust of the Helene Zelazo and
Nathaniel K. Zelazo 1992 Revocable Trusts dated
February 12, 1992 as amended from time to time,
Ronald Zelazo, individually and as Custodian for
Daniel Zelazo and Maya Zelazo under the Wisconsin
Uniform Gifts to Minors Act and as Trustee for the
Daniel Zelazo, David E. Zelazo and Maya Zelazo 1991
Trusts dated December 18, 1991, Ziona Zelazo,
individually and as Custodian for Daniel Lev-Arie
Zelazo under the Wisconsin Uniform Gifts to Minors
Act and Astronautics Corporation of America, a Wis-
consin corporation, Defendants-Respondents.

Henry C. REGET, Plaintiff-Appellant,

v.

Annette Zelazo MIDDLETON, f/k/a Annette Zelazo,
individually and as Trustee for the Ronald Zelazo

†Petition to review denied.

278

1984 Trust, Ronald Zelazo, individually and as Custodian for Daniel Zelazo and Maya Zelazo under the Wisconsin Uniform Gifts to Minors Act and as Trustee for the Daniel Zelazo, David E. Zelazo and Maya Zelazo 1991 Trusts dated December 18, 1991 and Ziona Zelazo, individually and as Custodian for Daniel Lev-Arie Zelazo under the Wisconsin Uniform Gifts to Minors Act, James A. Lovell, Jr., Hans Mark and William L. Staples, Defendants-Respondents.

Court of Appeals

*No. 99–0838. Submitted on briefs September 12, 2000.—Decided February 8, 2001.*

2001 WI App 73

(Also reported in 626 N.W.2d 302.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James T. Martin* and *John E. Varpness* of *Gislason, Martin & Varpness, P.A.* of Edina, Minnesota.

On behalf of the defendants-respondents, James A. Lovell, Jr., William L. Staples and Dr. Hans Mark, the cause was submitted on the brief of *Craig M. White* of *Wildman, Harrold, Allen & Dixon* of Chicago, Illinois and *Mark E. Sostarich* of *Petrie & Stocking S.C.* of Milwaukee.

On behalf of the defendants-respondents, Norma Zelazo Paige, Samuel Paige, Holly Russek, Michael Russek, Annette Zelazo Middleton, Nathaniel K. Zelazo, Ronald Zelazo, Ziona Zelazo, and Astronautics Corporation of America, the cause was submitted on the brief of *Stephen E. Kravit, Mark M. Leitner* and *Joseph S. Goode* of *Kravit, Gass, Hovel & Leitner S.C.* of Milwaukee.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

¶ 1. ROGGENSACK, J. Henry Reget, a minority shareholder in Astronautics Corporation of America (Astronautics), sued the officers, directors, other shareholders who are related to Astronautics's founder and the corporation for breach of fiduciary duty. He seeks damages, a judicially ordered payment of dividends and the purchase of his stock at a price acceptable to him. He also seeks dissolution of the corporation based on the same factual allegations that he made to support his claims of breach of fiduciary duty. We conclude

that: (1) for all defendants, except those who are directors, Reget's amended complaint fails to state claims upon which relief can be granted; (2) for the directors, he has made no factual showing sufficient to draw into question the initial presumption of the business judgment rule; and (3) there has been no showing of oppression. Therefore, we affirm the circuit court's grant of summary judgment dismissing the amended complaint.

## BACKGROUND

¶ 2. Reget is a minority shareholder of Astronautics, in which he owns nineteen shares. He obtained ten shares in 1971 in lieu of being repaid a $25,000 obligation due him, and he also purchased nine shares in 1972 from a person not a party to this lawsuit, for approximately $25,000. Reget has never been an officer, director or employee of Astronautics, nor has he ever directly invested any money in the company.

¶ 3. Astronautics is a Milwaukee-based corporation that was founded in 1959. It designs, develops and manufactures electronic systems used in commercial land, sea, aerospace and military equipment. Astronautics and Kearfott Guidance and Navigation Corporation (Kearfott), a wholly owned subsidiary Astronautics acquired in 1988, employ more than 2,000 people and maintain facilities around the world.

¶ 4. Astronautics is a closely held corporation, the shares of which have no restriction on their sale but are not traded on any public market. However, it is not a statutory close corporation under ch. 180, subch. XVIII of the Wisconsin Statutes. It is also an IRS subchapter C corporation, rather than a subchapter S

corporation. There are 1,811[1] shares of Astronautics outstanding, of which 286[2] shares are owned by shareholders with no family connection to Nathaniel Zelazo, Astronautics's founder.

¶ 5. Although there is no established market for Astronautics, there have been sales, some in which Reget participated or attempted to participate. For example, in 1982 a trust company sold fifty-two shares of Astronautics, and Reget bid $4,000 for one share. His bid was unsuccessful because the trust company preferred to sell the stock as a lot, which it did at $3,333 per share. In 1984, Astronautics offered to purchase all of the shares of any shareholder who owned no more than sixty-five shares for $9,800 a share. Reget declined Astronautics's offer. Single shares of Astronautics were sold for $10,000 each in 1984 and 1995. Ten thousand dollars is the highest price ever paid for a single share of Astronautics.

¶ 6. Astronautics has never paid a dividend. Its board of directors, which decides whether to pay dividends, has concluded that Astronautics would be best served by reinvesting its profits in research, development, acquisition of other companies and their assets, and profit sharing for its employees.[3] To compete with

---

[1] Reget submitted a document showing a total of 1,975 outstanding shares of Astronautics. The difference is due to the 164 shares of issued and outstanding stock owned by the corporation.

[2] The same document referenced in footnote 1 also indicates that persons who are not part of the extended family of Nathaniel Zelazo own 148 shares. This difference is not significant to our decision.

[3] Astronautics purchased Kearfott, one of its wholly owned subsidiaries, for approximately $285,000,000 through a large cash payment and the assumption of debt. Astronautics has also

such mega-companies as Honeywell, Litton, and Allied Signal, the board has determined that it is necessary to maintain significant cash reserves. The board of directors also sets the compensation for Astronautics's employees, except for those employees who are also directors. Their compensation is set by the three outside directors, James Lovell, Jr., William Staples and Hans Mark, who comprise a separate compensation committee.

¶ 7. Reget's suit claims breaches of fiduciary duty by all officers, all directors and those shareholders of Astronautics who have a family connection to Nathaniel Zelazo. He seeks dissolution of the corporation based on what he alleges is oppression under WIS. STAT. § 180.1430(2)(b) (1997–98),[4] perpetrated by the same defendants. He also prays the court to award damages, dividends and the purchase of his stock at its "fair value."

¶ 8. Three concerns drive Reget's claims of breach of fiduciary duty and his allegation of oppression: (1) the defendants have not maintained a market for the sale of his stock or offered to purchase his stock at a price he believes is fair; (2) Astronautics has not paid dividends, despite its cash-rich position; and (3) five family members have received compensation for their services to the corporation that he believes is too high.[5]

purchased the assets of Pathfinder Engineering Corporation and Cirrus Corporation in a similar fashion.

[4] All further references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[5] Reget's amended complaint also alleges that there have been transfers of shares to family members by gift and that the actual fair value of the stock was not indicated in those transfers. Those allegations, even if true, pertain to taxation and

¶ 9. In their answers, the defendants admit that they do not maintain a market for Astronautics stock, that they have not offered to purchase Reget's stock at a price acceptable to him and that the company has never paid a dividend. However, they deny that excessive compensation has been paid. They assert the following affirmative defenses: failure to state a claim on which relief can be granted, statute of limitations, business judgment rule, derivative claims and claim preclusion under WIS. STAT. § 180.0828.[6] The circuit court dismissed Reget's claims on summary judgment. Reget appeals.

## DISCUSSION

### Standard of Review.

██

¶ 10. We apply the same summary judgment methodology as the circuit court. *Cemetery Servs., Inc. v. Department of Regulation & Licensing*, 221 Wis. 2d 817, 823, 586 N.W.2d 191, 194 (Ct. App. 1998). We first

---

reporting obligations outside the scope of this appeal. Therefore, we will not deal with them further in this opinion.

[6] WIS. STAT. § 180.0828 states in relevant part:

> **Limited liability of directors. (1)** . . . a director is not liable to . . . shareholders . . . for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director, unless the person asserting liability proves that the breach or failure to perform constitutes any of the following:
>
> (a) A wilful failure to deal fairly with the corporation or its shareholders in connection with a matter in which the director has a material conflict of interest.
> . . .
> (c) A transaction ·from which the director derived an improper personal profit.
> (d) Wilful misconduct.

examine the complaint to determine whether it states a claim, and then we review the answer to determine whether it joins a material issue of fact or of law. *Id.* If we conclude that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a *prima facie* case for summary judgment. *Id.* If they do, we look to the opposing party's affidavits to determine whether there are any material facts in dispute which entitle the opposing party to a trial.

¶ 11. Whether a minority shareholder has been oppressed within the meaning of WIS. STAT. § 180.1430(2)(b) is a mixed question of fact and law. Whether certain events occurred are questions of historic fact determined by the circuit court, which we will not reverse unless they are clearly erroneous. WIS. STAT. § 805.17; *State v. Badker*, 2001 WI App 27, ¶ 8, 240 Wis. 2d 460, 469, 623 N.W.2d 142, 146. However, the determination of whether the historic facts as found by the circuit court, or as agreed to by the parties, constitute oppression is a question of law, which we decide *de novo*. *Davis v. Sheerin*, 754 S.W.2d 375, 380 (Tex. Ct. App. 1988).

**Breach of Fiduciary Duty.**

¶ 12. A corporate officer or director is under a fiduciary duty to act in good faith and to deal fairly in the conduct of all corporate business. *Modern Materials, Inc. v. Advanced Tooling Specialists, Inc.*, 206 Wis. 2d 435, 442, 557 N.W.2d 835, 838 (Ct. App. 1996). This duty extends to the corporation, itself, and to its shareholders. *Id.*; *Grognet v. Fox Valley Trucking Serv.*, 45 Wis. 2d 235, 241, 172 N.W.2d 812, 816 (1969). Reget

asserts he brings his claims for breach of fiduciary duty individually, rather than as a derivative action, wherein he would have been required to show that he adequately represented the interests of the corporation in enforcing a right of the corporation. WIS. STAT. § 180.0741; *Read v. Read*, 205 Wis. 2d 558, 565, 556 N.W.2d 768, 771 (Ct. App. 1996). However, to bring individual claims for breach of a fiduciary duty, Reget's amended complaint must allege facts sufficient, if proved, to show an injury that is personal to him, rather than an injury primarily to the corporation. *Jorgensen v. Water Works, Inc.*, 218 Wis. 2d 761, 776–77, 582 N.W.2d 98, 104 (Ct. App. 1998). He also must show that each defendant had a fiduciary duty to him in respect to corporate affairs and that the conduct alleged in his amended complaint, as to each defendant, constitutes a breach of that duty. *Rose v. Schantz*, 56 Wis. 2d 222, 228, 201 N.W.2d 593, 597 (1972).

¶ 13. In support of Reget's claims for breach of fiduciary duty, the amended complaint alleges or permits reasonable inferences that: (1) the officers, directors, shareholders and corporation did not maintain a general market for the sale and purchase of Astronautics stock; (2) Astronautics offered to purchase his stock at what he believes was an inadequate price, which offer he refused; (3) he asked the individual defendants and the corporation to purchase his shares at what he believes is a fair price, but they have not responded to his offer; (4) no dividends were paid to the shareholders, rather, Astronautics bought other companies and assets of other companies with its profits; (5) the corporation wasted corporate funds by paying five family members "substantial compensation in the form of salaries, bonuses, profit sharing contributions, deferred compensation benefits and certain

entitlements to cash surrender value of life insurance policies on key employees of Astronautics"; and (6) the "substantial compensation" paid to five employees was payment in lieu of dividends. We conclude that the allegations made and their reasonable inferences, except for the sixth one stated immediately above, are insufficient to state claims for a breach of fiduciary duty by any defendant.

### 1. *Failure to Make a Market.*

¶ 14. In regard to the first allegation that the defendants have not established a market for Astronautics stock, Reget provides no support for his basic assertion that Astronautics or any of its officers, directors or shareholders have a duty to do so. He cites no authority that would establish a duty to make a market in Astronautics stock or to purchase his stock at a price acceptable to him.[7] A claim for breach of fiduciary duty, of course, is bottomed on a duty that is breached. *Rose*, 56 Wis. 2d at 228, 201 N.W.2d at 597. Under the facts alleged, none of the defendants have a duty to Reget in this regard. Therefore, we conclude that allegations that there is no market for Astronautics stock and that the corporation, officers, directors or other shareholders will not make one or purchase Reget's stock at a price acceptable to him cannot support a claim for breach of fiduciary duty.

---

[7] Reget refused the corporation's 1984 offer to purchase his stock at $9,800, a figure very close to the $10,000 per stock share paid by individuals trading the stock as late as 1995 and one which would have turned his $50,000 stock investment into $186,200.

### 2. *Nonpayment of Dividends.*

¶ 15. In regard to the second allegation, that no dividends have been paid to the shareholders, we note that until the profits of a corporation are declared as a dividend, the shareholders have no right or title in them and such profits belong exclusively to the corporation. *Franzen v. Fred Rueping Leather Co.*, 255 Wis. 265, 271–72, 38 N.W.2d 517, 520 (1949). Rather than being used to pay dividends, corporate profits may be added to the assets of the corporation to use for other corporate purposes. *Id.* at 272, 38 N.W.2d at 520. As with his allegation concerning the lack of a market for his stock, Reget cites no authority[8] for the assertion that a board of directors has a duty to pay dividends to shareholders instead of using profits for other purposes. However, he implies that the compensation paid five executives was excessively high and should be viewed as partially a payment of dividends. If he can provide evidentiary facts, which, if proved, would show bad faith by the six directors[9] in their employee com-

---

[8] We note Reget cites no contract between him and the corporation to pay a dividend rather than using the corporate profits for research, development, acquisitions and other corporate purposes. *Cf. Franzen v. Fred Rueping Leather Co.*, 255 Wis. 2d 265, 39 N.W.2d 161 (1949); *Jorgensen v. Water Works, Inc.*, 218 Wis. 2d 761, 776–77, 582 N.W.2d 98, 104 (Ct. App. 1998). .

[9] The family member directors are: Nathaniel Zelazo, the founder of the company, who is the chief executive officer, a shareholder and a member of the board of directors; Norma Paige, a co-founder of the company, who is a shareholder, chair of the board of directors and the executive vice president; and Ronald Zelazo, a shareholder, member of the board of directors and president.

pensation decisions, he will have stated a claim and made a *prima facie* case sufficient to survive summary judgment in regard to the six directors. We examine those allegations of compensation in lieu of dividends in the section on officers' and directors' compensation. However, in regard to all other defendants, Reget has identified no duty that any of them have breached. Accordingly, the amended complaint fails to state claims for breach of fiduciary duty in regard to the lack of dividends as to those defendants.

### *3. Compensation of Officers and Directors.*

■

¶ 16. In regard to the third allegation that "substantial compensation" is being paid to five employees of the corporation, therefore wasting corporate assets, that is usually an allegation of an injury primarily to the corporation. Generally, a claim of waste of corporate assets must be pursued in a derivative action; it cannot be brought as a direct action by Reget. *Rose*, 56 Wis. 2d at 229, 201 N.W.2d at 598; *Read*, 205 Wis. 2d at 570, 556 N.W.2d at 773.[10] Additionally, Reget was

---

Outside directors are: James Lovell, Jr., a non-shareholder director, the past commander of NASA's Apollo XIII space mission, a retired astronaut and U.S. Naval Officer; William Staples, a non-shareholder director and the retired executive vice president of Bank of America-Illinois; and Hans Mark, a non-shareholder director, past secretary of the U.S. Air Force, a director of NASA and chancellor of the University of Texas System. Subsequent to the filing of this lawsuit, Mark resigned from the board because of his appointment to the United States Office of the Director of Defense, Research and Engineering and his confirmation to that office by the United States Senate.

[10] Other jurisdictions have also concluded that paying compensation in excess of what a minority shareholder believes is

never employed by Astronautics, so the compensation paid to employees is not at the expense of compensation formerly paid to him, as occurred in *Jorgensen*. Furthermore, he has not even attempted to identify acts by most of the shareholders he named that relate to decisions about employee salaries. Therefore, his amended complaint does not support individual claims for a breach of fiduciary duty, except as decided above, for the six directors and the inference that they have set higher compensation for Nathaniel Zelazo, Norma Paige, Ronald Zelazo, Michael Russek and Holly Russek instead of paying them dividends. Accordingly, we affirm the circuit court's dismissal of those claims as to all defendants except Nathaniel Zelazo, Norma Paige, Ronald Zelazo, James Lovell, Jr., William Staples and Hans Mark.

¶ 17. We consider Reget's demand for judicial examination of the corporate business decision setting compensation in light of Wisconsin's adherence to the business judgment rule. The business judgment rule is a judicially created doctrine that contributes to judicial economy by limiting court involvement in business decisions where courts have no expertise and contributes to encouraging qualified people to serve as directors by ensuring that honest errors of judgment will not subject them to personal liability. *See Steven v. Hale-Haas Corp.*, 249 Wis. 205, 23 N.W.2d 620 (1946). It generally works to immunize individual directors from liability and protects the board's actions from undue scrutiny by the courts. *See* Kenneth B. Davis,

---

appropriate is a claim of injury primarily to the corporation and must be brought as a derivative action. *Heller v. Boylan*, 29 N.Y.S.2d 653 (N.Y. Sup. Ct.), aff'd, 32 N.Y.S.2d 131 (N.Y. App. Div. 1941); *Mann-Paller Found., Inc. v. Econometric Research, Inc.*, 644 F. Supp. 92 (D.D.C. 1986).

Jr., *Once More, The Business Judgment Rule*, 2000 Wis. L. Rev. 573 (2000). As the court explained in *Hale-Haas*:

> [T]his court will not substitute its judgment for that of the board of directors and assume to appraise the wisdom of any corporate action. The business of a corporation is committed to its officers and directors, and if their actions are consistent with the exercise of honest discretion, the management of the corporation cannot be assumed by the court.

*Id.* at 221, 23 N.W.2d at 628 (citation omitted).

¶ 18. Procedurally, the business judgment rule creates an evidentiary presumption that the acts of the board of directors were done in good faith and in the honest belief that its decisions were in the best interest of the company. *Kaplan v. Centex Corporation*, 284 A.2d 119, 124 (Del. Ch. 1971). Furthermore, it has long been held in Wisconsin that courts will grant directors wide discretion in their decisions about the compensation paid to those who perform services for the corporation when it is honestly exercised. *Gauger v. Hintz*, 262 Wis. 333, 345, 55 N.W.2d 426, 433 (1952). And, as the Wisconsin Supreme Court has noted:

> In the absence of evidence tending to show over-reaching, fraud, and unreasonableness in the matter of fixing a salary for a particular job, a court ought not substitute its judgment for that of the board of directors and assume to appraise the wisdom of any corporate action.

*Id.* at 345–46, 55 N.W.2d at 433. One who complains about the compensation paid to a director who is employed by the corporation must show something more than the compensation paid is higher than he

believes is reasonable to overcome the presumption that "the laborer is worthy of his hire." *Id.* at 346, 55 N.W.2d at 433 (internal quotations omitted). In *Einhorn v. Culea*, 2000 WI 65, 235 Wis. 2d 646, 612 N.W.2d 78, the supreme court recently discussed the business judgment rule. The court opined that judicial review of internal corporate business decisions is unavailable for informed good faith decisions made in the honest belief that the actions taken were in the corporation's best interests. *Id.* at ¶ 19.

¶ 19. Here, the directors have raised the business judgment rule as a defense to Reget's claim that the compensation paid to Nathaniel Zelazo, Norma Paige, Ronald Zelazo, Michael Russek and Holly Russek is so substantial that it must be viewed as partially a payment of dividends. They have provided corporate documents which show that the board of directors establishes the compensation of these employees, except those who are also board members: Nathaniel Zelazo, Norma Paige and Ronald Zelazo. The salaries of those three employees are set by a compensation committee comprised of the three board members who have no stock in Astronautics and are not part of Nathaniel Zelazo's extended family.[11]

¶ 20. To survive summary judgment on this issue in the face of the business judgment rule, Reget must come forward with sufficient evidentiary facts to make a *prima facie* case that the outside directors willfully compensated Nathaniel Zelazo, Norma Paige and Ronald Zelazo excessively for the services they provided to the corporation in an effort to pay them dividends,

---

[11] It may be argued that a director who sets his own salary is not protected by the business judgment rule. *See Steven v. Hale-Haas Corp.*, 249 Wis. 205, 221, 23 N.W.2d 620, 627 (1946). However, that concern does not arise here.

which they willfully withheld from other shareholders. However, Reget has provided no factual evidence in opposition to the defendants' submissions supporting summary judgment, which would permit a reasonable inference that Lovell, Staples and Mark undertook their duties with anything other than absolute good faith. Therefore, because Reget has not met this threshold requirement, the business judgment rule shields the compensation committee's decisions from judicial review of the amount of compensation paid to Nathaniel Zelazo, Norma Paige and Ronald Zelazo for the services each provided to the corporation.

¶ 21. In regard to the compensation the corporation paid Holly Russek and Michael Russek, again, Reget has provided nothing by way of evidentiary facts that would imply that the board's decisions about their compensation were made in anything other than good faith. He has shown no evidence of fraud or bad faith. He relies solely on their membership in the extended family of Nathaniel Zelazo and an assertion that Astronautics had the ability to pay dividends but did not. However, those facts do not give rise to a reasonable inference that Lovell, Staples, Mark, Nathaniel Zelazo, Norma Paige and Ronald Zelazo[12] set Holly's and Michael's compensations in bad faith as a way to disguise payments of dividends to them that other shareholders did not receive. As we noted above, Astronautics has no obligation to pay dividends simply because it can, and Michael's and Holly's connection to Nathaniel Zelazo is common to many shareholders who received no dividends or other compensation from Astronautics.

---

[12] The record shows that Norma Paige, as chair of the board of directors, does not vote unless there is a tie vote.

¶ 22. Reget argues that his expert, Gerald Gray, provided a basis for finding bad faith. In his deposition testimony, Gray opines that because his knowledge of the competence, working hours and duties of each of the five employees is incomplete, so is his opinion that their compensation is on the high end of what he might expect. Paying compensation that one person believes may be on the high end is not sufficient to support a finding or a reasonable inference of fraudulent conduct or bad faith necessary to overcome the presumption of good faith afforded actions of directors under the business judgment rule. Accordingly, we conclude that the defendants have established a *prima facie* factual basis for the dismissal of the breach of fiduciary duty claims against all board members, and Reget has provided no facts or reasonable inferences from facts which, if proven, would meet the initial showing necessary to draw into question the presumption of good faith established by the business judgment rule. Therefore, we affirm the circuit court's dismissal of all claims for breach of fiduciary duty against all defendants.

**Oppression.**

■

¶ 23. Reget also sues for the dissolution of Astronautics because of what he contends is oppressive conduct under Wis. Stat. § 180.1430(2)(b), which states in relevant part:

> The circuit court for the county where the corporation's principal office . . . may dissolve a corporation in a proceeding:
>
> . . .

(2) By a shareholder, if any of the following is established:

. . .

(b) That the directors or those in control of the corporation have acted, are acting or will act in a manner that is illegal, oppressive or fraudulent.

An allegation of oppression is not a claim for relief, but rather, a legal standard to be fulfilled before a circuit court may order liquidation of a corporation based on the acts of those who control it. *Davis*, 754 S.W.2d at 380. Although the statute does not define "oppressive," we defined oppressive conduct for the purposes of this statute in *Jorgensen*:

> [B]urdensome, harsh and wrongful conduct; a lack of probity and fair dealing in the affairs of the company to the prejudice of some of its members; or a visual departure from the standards of fair dealing, and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely.

*Jorgensen*, 218 Wis. 2d at 783, 582 N.W.2d at 107 (quoting *Baker v. Commercial Body Builders, Inc.*, 507 P.2d 387, 393 (Or. 1973)).

¶ 24. In *Jorgensen*, we approached WIS. STAT. § 180.1430(2)(b) as a ground for dissolution based on the Jorgensens' allegation of the breach of a fiduciary duty individual to them. *Jorgensen* also involved a closely held corporation, but with a much smaller nucleus of shareholders. Duane and Sharon Jorgensen were founding members of the corporation, and together with four other shareholders, they capitalized the corporation at its inception. Initially, all six were members of the board of directors, Duane was the president, and each couple received the same weekly

298

payment from the corporation. Duane claimed that he had an agreement to be the president of the corporation throughout his lifetime. However, when he complained about some of the other directors' activities, the others voted him and Sharon off the board and removed Duane as president of the corporation. They also terminated the weekly payments which the Jorgensens had received since the inception of the corporation but continued to make weekly payments to themselves. We concluded that allegations of removing Duane as president, removing Duane and Sharon as directors and failing to pay weekly payments to the Jorgensens while continuing to pay them to other shareholders stated a claim for an injury personal to the Jorgensens. If proven, we reasoned that it could rise to the level of oppression pursuant to § 180.1430(2)(b).

¶ 25. The definition of oppressive conduct we adopted in *Jorgensen* requires that those in control of a corporation willfully treated *some of the shareholders* in a wrongful manner to which other shareholders were not subjected. We also concluded that when oppression is alleged in regard to the operation of a closely held corporation, its factual underpinnings are similar to those of an individual claim of breach of fiduciary duty to a minority shareholder. *Jorgensen*, 218 Wis. 2d at 783, 582 N.W.2d at 107. Therefore, oppression requires that the complaining shareholder prove that those in control of the corporation willfully and wrongfully inflicted a direct injury upon him that benefited the stockholders who were not injured.

¶ 26. Reget relies on the same factual allegations to support his contention that he has been oppressed as he does for his claims for breach of fiduciary duty. We

299

have already concluded that no defendant has a duty to maintain a market or to purchase Reget's stock at a price acceptable to him. We also note that all defendants could complain of the same lack of a market as does Reget. Therefore, there can be no oppression bottomed on these allegations. In regard to the non-payment of dividends, as we concluded, no shareholder is treated in a manner more favorable than Reget. None received dividends; all were equally subjected to the board's decision to use surplus profits for other corporate purposes. And finally, in regard to Reget's concern about the level of compensation paid to five employees, he has made no showing sufficient to draw into question the good-faith basis for the board's decisions. Decisions of the board made in good faith cannot satisfy the definition we established for oppressive conduct in *Jorgensen*. Accordingly, we conclude that the circuit court correctly dismissed Reget's request for dissolution of Astronautics based on oppression.

## CONCLUSION

¶ 27. We conclude that: (1) for all defendants, except those who are directors, Reget's amended complaint fails to state claims upon which relief can be granted; (2) for the directors, he has made no factual showing sufficient to draw into question the initial presumption of the business judgment rule; and (3) there has been no showing of oppression. Therefore, we affirm the circuit court's judgment dismissing the amended complaint.

*By the Court.*—Judgment affirmed.