COURT OF APPEALS
DECISION
DATED AND FILED

July 31, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1259**

Cir. Ct. No. 2020CV1293

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

ESTATE OF STEPHEN O'BRYAN, BRENDAN TIM O'BRYAN,
JOAN O'BRYAN HERRIOTT, MICHAEL O'BRYAN, STEPHEN F. O'BRYAN
AND TERRENCE O'BRYAN,

    PLAINTIFFS-RESPONDENTS,

  V.

LAKEWOOD FARMS, INC.,

    DEFENDANT,

DAVID O'BRYAN, DEBORAH O'BRYAN ALM, ROBERT O'BRYAN,
THOMAS O'BRYAN AND WILLIAM O'BRYAN,

    DEFENDANTS-APPELLANTS.

---

       APPEAL from an order of the circuit court for Waukesha County: MICHAEL O. BOHREN, Judge. *Reversed.*

       Before Neubauer, Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1       PER CURIAM.   The directors of Lakewood Farms, Inc. ("LFI"), appeal an order dissolving the corporation pursuant to WIS. STAT. § 180.1430(2)(b) (2021-22)[1] and appointing a receiver to wind up and liquidate its business affairs.[2]   They argue there was insufficient evidence of "illegal, oppressive or fraudulent" conduct within the meaning of the statute, particularly in light of past legal challenges to their control of the corporation that were resolved in their favor.  We agree with the Corporate Individuals and reverse.

## BACKGROUND

¶2       A thorough discussion of background facts is contained in our prior decision concerning similar litigation.   *See Estate of O'Bryan v. O'Bryan*, No. 2020AP997, unpublished slip op. ¶¶2-13 (Nov. 24, 2021).   For ease of reading, we briefly set forth some relevant facts here.

¶3       LFI was incorporated in 1973 by the O'Bryan family matriarch, who began gifting shares to her children.  *Id.*, ¶3.   The articles of incorporation authorized the issuance of up to 50,000 common shares.  *Id.*   In 1980, the corporation was recapitalized and the common shares were exchanged for

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] This lawsuit involves primarily members of the O'Bryan family on both sides.  We will refer to the Plaintiff-Respondent O'Bryans as "the Shareholders."  In doing so, we are mindful of the fact that the Defendant-Appellant O'Bryans are also shareholders, but because the allegation against them primarily pertains to their control of the corporation, we will refer to the Defendants-Appellants as "the Corporate Individuals."   The corporation was previously dismissed from this appeal.

preferred shares. ***Id.***, ¶4. In 1990, a voting trust was created, with the vote of all 25,200 preferred shares being decided by a majority vote of the trustees. ***Id.*** At that time there were also 3,200 outstanding Class A common shares.

¶4 LFI's main holding was a large family farm. ***Id.***, ¶3. Between 1973 and 2010, LFI sold approximately half of the acreage to pay off loans and fund operating expenses. ***Id.***, ¶5. LFI's primary asset today is approximately 1,200 acres of land, which is available for use by the O'Bryan family for vacations and retreats. Additionally, after most of the Corporate Individuals became involved in LFI management between 2010 and 2015, a portion of the property is now used for short-term rental activity and an event barn used for weddings and other events.[3]

¶5 In 2016, facing pressure from certain shareholders for a sale of the corporation or its assets and a buyout of their shares, four of the Corporate Individuals and a nonparty director voted to authorize the sale of previously unissued LFI common stock to the corporation's officers and directors. The Corporate Individuals subscribed to new common shares in a sufficient quantity to constitute a majority of the voting shares. The stock purchases were partially financed with promissory notes.

¶6 A subset of the Shareholders filed suit, claiming that the Corporate Individuals had breached their fiduciary duties and seeking to void the issuance of

---

[3] A significant event in the history of corporate affairs appears to be a 2010 offer from the Department of Natural Resources for over $10 million. That sale was approved by the board of directors but failed a shareholder vote as a result of three of the five voting trustees directing the vote of the 25,200 preferred shares. ***Estate of O'Bryan v. O'Bryan***, No. 2020AP997, unpublished slip op. ¶5 (Nov. 24, 2021).

common stock. Following unsuccessful attempts to resolve the lawsuit, it was dismissed without prejudice in February 2018, with the circuit court holding that the action was improperly pled as a direct claim when in fact it was derivative in nature.

¶7     In April 2018, the Shareholders commenced a derivative action against the Corporate Individuals. In addition to challenging the Corporate Individuals' control of LFI, the Shareholders also challenged the Corporate Individuals' actions at an April 20, 2018 special shareholder meeting, after which the Corporate Individuals redeemed their Class A common stock and collectively purchased 50,000 shares of newly authorized Class B common stock at a par value of $1.00 per share.

¶8     The circuit court held a trial in that case in August 2019, after which the Shareholders urged the court to appoint a receiver or order the dissolution of LFI.[4] But their derivative suit faced an additional obstacle: WIS. STAT. § 180.0742, which prohibits the commencement of a derivative action unless a written demand has been made on the corporation and the corporation has been given ninety days to reject it.

¶9     The circuit court rejected the Shareholders' argument that various letters and filings constituted a sufficient demand under WIS. STAT. § 180.0742, and it dismissed the derivative action. The Shareholders alternatively argued that even if their 2018 lawsuit was not viable based on the lack of a demand, the court

_____

[4] The Shareholders acknowledged this relief had not been sought in the complaint, but they argued these remedies were within the equitable authority of the court or they should be permitted to amend their pleading to state a claim for dissolution to conform to the proof at trial.

should recast their claim as one for judicial dissolution based on oppression under WIS. STAT. § 180.1430(2). The court declined that request, observing that the evidentiary record on that issue had not been established and concluding that it would be "fundamentally unfair" to the Corporate Individuals to change the nature of the case after trial.

¶10 This court affirmed the dismissal. In addition to rejecting the Shareholders' assertion that there was a sufficient demand made upon LFI, we noted that requests for a share buyout or to sell the corporate assets and distribute the proceeds to shareholders did not involve derivative claims. *See* ***Estate of O'Bryan***, No. 2020AP997, ¶¶27-28.

¶11 The Shareholders then commenced this direct action in September 2020. In addition to challenging the prior actions of the Corporate Individuals regarding the control of LFI, the complaint included new allegations of corporate malfeasance relating to a bank loan in November 2019, to the election of two new directors at a shareholder meeting in 2020, and to the failure to share corporate financial information with shareholders, among other things.[5] As relief, the Shareholders sought judicial dissolution of LFI pursuant to WIS. STAT. § 180.1430 and removal of all of the Corporate Individuals as directors.

¶12 The Corporate Individuals sought summary judgment, asserting that the lawsuit was barred by claim and issue preclusion. The circuit court rejected that argument, concluding that the "operative facts of the case" were those that occurred after the trial in the 2018 case. The court regarded the allegations about

---

[5] As set forth below, none of these allegations formed the basis for the circuit court's ultimate conclusion that the Shareholders had been oppressed by the Corporate Individuals.

events that occurred prior to that time as being included in the complaint "for historical context," but it concluded the post-August 2019 allegations could "stand alone as a separate lawsuit."

¶13 The circuit court reiterated this conclusion at a pretrial hearing where the parties sought clarification on the relevance of certain background facts for evidentiary purposes. The court again remarked that the Shareholders' complaint was sufficient to the extent that it made allegations of oppressive conduct that had occurred after the trial in the previous lawsuit, adding, "if there's a dispute over something that happened previously, I think that dispute is over."

¶14 The matter proceeded to a court trial. The circuit court concluded there was no evidentiary basis to conclude the Corporate Individuals had misapplied or wasted corporate assets, and it denied the Shareholders' request for judicial dissolution on that ground. However, the court found that the Corporate Individuals had engaged in statutory oppression of the Shareholders. As a remedy, the court ordered LFI dissolved and appointed a receiver to wind up its business affairs and liquidate its assets.

¶15 The circuit court subsequently held a hearing on issues relating to the receivership, at which it further elaborated upon the reasons for its oppression determination. The Corporate Individuals now appeal from the dissolution order.[6]

---

[6] The Corporate Individuals have sought stays at various points pending this appeal, including a stay motion and request to expedite the appeal filed on June 6, 2024. The release of this opinion renders the motion moot, and we deny it on those grounds. *See **PRN Assocs. LLC v. DOA**,* 2009 WI 53, ¶29, 317 Wis. 2d 656, 766 N.W.2d 559 (holding an issue is moot when it will have no practical effect on an existing controversy).

**DISCUSSION**

¶16    WISCONSIN STAT. § 180.1430(2)(b) permits a circuit court to order the judicial dissolution of a corporation at a shareholder's request if "the directors or those in control of the corporation have acted, are acting or will act in a manner that is illegal, oppressive or fraudulent." This case centers on the Shareholders' allegation that the Corporate Individuals have engaged in oppressive conduct, namely "secur[ing] their own control of LFI and/or enrich[ing] themselves, to the detriment of both LFI and its shareholders at large."

¶17    Oppressive conduct that warrants judicial dissolution is not merely poor business decision-making. Rather, it is

> burdensome, harsh and wrongful conduct; a lack of probity and fair dealing in the affairs of the company to the prejudice of some of its members; or a visual departure from the standards of fair dealing, and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely.

*Jorgensen v. Water Works, Inc.*, 218 Wis. 2d 761, 783, 582 N.W.2d 98 (Ct. App. 1998) (citing *Baker v. Commercial Body Builders, Inc.*, 507 P.2d 387, 393 (Or. 1973)). The definition is intended to be broad and flexible rather than narrow and, in the context of a closely held corporation, it is "closely related to breach of the fiduciary duty owed to minority stockholders." *Id.*

¶18    Whether a shareholder has suffered oppression within the meaning of WIS. STAT. § 180.1430(2)(b) is a mixed question of fact and law. Matters of historical fact will be upheld unless the finding is clearly erroneous. *Reget v. Paige*, 2001 WI App 73, ¶11, 242 Wis. 2d 278, 626 N.W.2d 302. However, the determination of whether the historic facts as found by the circuit court constitute statutory oppression is a question of law that we review de novo. *Id.*

¶19    One central dispute in this case is whether any conduct of the Corporate Individuals prior to August 2019 can form the basis for new claims in light of claim preclusion principles. During the court's June 16, 2023 oral ruling, the court identified the oppressive conduct as "squeeze[ing] out the [Shareholders] from their equity interest in the corporation. And [the Corporate Individuals] did that by exercising their leverage in controlling the board."

¶20    We perceive two possibilities for what the circuit court meant by this. First, the court might have been suggesting that the fact of corporate control itself constituted the oppressive conduct. Second, the court might have been referring to some unspecified post-August 2019 conduct for its finding of oppression. As explained below, either way, the court's findings are problematic.

¶21    First, if the circuit court meant that the fact of corporate control itself constituted oppressive conduct, that finding was contrary to its earlier determination that the "operative facts of the case" were those events occurring on or after August 2019. Likewise, the court stated during a pretrial hearing that if there was a "dispute over something that happened previously, I think that dispute is over."

¶22    The circuit court correctly observed that claim preclusion prevented the Shareholders from basing their claim in this lawsuit from facts that were at issue in the prior litigation. "[A] final judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions or occurrences." *Teske v. Wilson Mut. Ins. Co.*, 2019 WI 62, ¶23, 387 Wis. 2d 213, 928 N.W.2d 555. As the circuit court repeatedly identified, the issue of corporate control could have been—and, at least in part, was—raised in the earlier lawsuits. As a result, we cannot assume that the court's ultimate

8

findings were inconsistent with its repeated prior determinations that the prior litigation had preclusive effect.[7]

¶23    Second, the circuit court might have been obliquely referring to some post-August 2019 conduct by the Corporate Individuals.  If so, we are left in a quandary.  The court's statement regarding the Corporate Individuals "exercising their leverage in controlling the board" is insufficiently specific to allow us to assess whether the evidence was sufficient to support its finding in that regard.

¶24    The parties therefore address the circuit court's comments during the receiver hearing in August 2023, at which the circuit court elaborated upon its findings when discussing the history of the case.  There, the court identified several specific instances of oppression, all of which the Corporate Individuals argue are insufficient to warrant judicial dissolution of the corporation under WIS. STAT. § 180.1430(2)(b).  We agree.

¶25    First, the circuit court stated that the oppression occurred "primarily when the majority shareholders wanted to get their interest out of the corporation." Corporate officers, however, have no duty to make a market for or to buy back stock at a price acceptable to the shareholder.  ***Reget***, 242 Wis. 2d 278, ¶¶14, 26. Accordingly, the Corporate Individuals' refusal to accommodate the Shareholders'

---

[7] The Shareholders argue that even if the circuit court premised its oppression finding on pre-August 2019 matters, doing so was proper because the earlier lawsuits had no preclusive effect.  However, the Shareholders appear to apply the standards governing the narrower doctrine of issue preclusion, not broader claim preclusion principles.  Wisconsin law applies the "transactional" approach to claim preclusion, treating all claims arising out of a common nucleus of operative facts as being part of a single cause of action and requiring them to be litigated together. ***Teske v. Wilson Mut. Ins. Co.***, 2019 WI 62, ¶¶31-32, 387 Wis. 2d 213, 928 N.W.2d 555.

attempts to extricate themselves from stock ownership does not supply a basis for a finding of oppression.

¶26   Second, the circuit court stated that the Corporate Individuals had the primary purpose of "maintain[ing] the farm for their individual use," "contrary to the desires and the wishes of the majority [of] people that own interest in the real estate."   As set forth above, this appears to go to the issue of corporate control, which may not provide a basis for a finding of oppression in this case. Otherwise, this finding does not implicate a breach of fiduciary duty, a lack of fair dealing, or the unequal treatment of shareholders.  *See Reget*, 242 Wis. 2d 278, ¶26.   The court repeatedly emphasized that all shareholders in the family are allowed to use the property.[8]

¶27   Third, the circuit court mentioned certain trial evidence about "encumbering the farm, taking out loans for the farm, refinancing it, the need to be able to pay off a loan that's coming up."   But the court had specifically rejected the Shareholders' dissolution claim alleging misapplication or waste of corporate assets.  *See* WIS. STAT. § 180.1430(2)(d).  In doing so, the court remarked that the Corporate Individuals received the benefit of the business judgment rule.  *See Steven v. Hale-Haas Corp.*, 249 Wis. 205, 221, 23 N.W.2d 620 (1946) ("[T]his court will not substitute its judgment for that of the board of directors and assume to appraise the wisdom of any corporate action."); *see also* WIS. STAT.

---

[8] As the Corporate Individuals recognize, there "were some limits on the availability of the property because of the VRBO and event barn operations necessary to make LFI self-sustaining, but those limits applied to all family members."  The business decision to keep the property as a going affair as opposed to selling it off to pay out shareholders does not meet the *Reget* standard for oppression.

§ 180.0828(1).  The Corporate Individuals' attempts to maintain the property as a going concern do not rise to the level of oppression under § 180.1403(2)(b).

¶28    Fourth and finally, the circuit court mentioned the Corporate Individuals' settlement related to compensation with Thomas O'Bryan, who is LFI's sole full-time employee and LFI's on-site property manager.  His compensation was set at $35,000 in 1994.  He sought a raise after his duties expanded and the matter was referred to a subcommittee of the board of directors.  After performing salary research, the board ultimately reached an employment agreement with Thomas, which included approximately $60,000 in annual compensation and back pay from the time his additional duties began.

¶29    None of the foregoing relating to Thomas O'Bryan's compensation is sufficient evidence of oppression.  Again, the circuit court specifically determined that there had been no misuse or waste of corporate assets.  Affording fair compensation to an employee of the corporation—even one who is a shareholder—after careful deliberation is not the type of harsh or wrongful conduct or lack of fair dealing that would warrant judicial dissolution.  The Corporate Individuals' treatment of Thomas's request for additional compensation does not suffice as WIS. STAT. § 180.1430(2)(b) oppression.

¶30    We additionally address the Shareholders' claim that the Corporate Individuals have forfeited their arguments by failing to raise them below.  The Shareholders contend the Corporate Individuals' arguments constitute allegations of "plain error" that needed to have been raised through a motion for reconsideration.  We disagree.

¶31    The Corporate Individuals vociferously argued during the court trial that none of their actions rose to the level of statutory oppression warranting

judicial dissolution. We perceive their arguments on appeal as addressing the same question—in essence, a sufficiency of the evidence challenge. Following a court trial, "the question of the sufficiency of the evidence to support the findings may be raised on appeal whether or not the party raising the question has objected in the trial court to such findings or moved for [a] new trial." WIS. STAT. § 805.17(4). Accordingly, forfeiture is not appropriate here.

*By the Court*.—Order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.