Edward U. Notz,
Plaintiff-Appellant-Cross-Respondent-Petitioner,

v.

Everett Smith Group, Ltd., Thomas J. Hauske,
Jr., Randall M. Perry, Anders Segerdahl,
Steven J. Hartung and Albert Trostel & Sons
Company, Defendants-Respondents-Cross-
Appellants-Cross Petitioners.

Supreme Court

*No. 2006AP3156. Oral argument January 6, 2009.
—Decided April 29, 2009.*

2009 WI 30

(Also reported in 764 N.W.2d 904.)

641

For the plaintiff-appellant-cross-respondent-petitioner there were briefs by *Robert H. Friebert, Matthew W. O'Neill,* and *Friebert, Finerty & St. John, S.C.,* Milwaukee, and oral argument by *Matthew W. O'Neill.*

For the defendants-respondents-cross-appellants-cross petitioners there were briefs by *Thomas L. Shriner, Jr., G. Michael Halfenger, Rebecca Wickhem House,* and *Foley & Lardner LLP,* Milwaukee, and oral argument by *Thomas L. Shriner, Jr.*

¶ 1. N. PATRICK CROOKS, J. This review of a published court of appeals decision[1] involves three questions that arise in the context of a minority shareholder's lawsuit against the majority shareholder: (1) whether the allegations in the complaint state a direct claim by the minority shareholder for breach of fiduciary duty; (2) whether an allegation that the majority shareholder benefited from due diligence —paid for by the corporation for the shareholder's own purposes without reimbursement to the corporation— supports a direct claim by the minority shareholder for breach of fiduciary duty; and (3) whether a pending direct claim by the minority shareholder for judicial dissolution (based on oppressive conduct) survives a cash-out merger that eliminates the petitioner's status as a shareholder.

¶ 2. The court of appeals held that the minority shareholder's complaint failed to state a direct claim for breach of fiduciary duty because the primary harm alleged was to the corporation, not to the shareholder.

---

[1] *Notz v. Everett Smith Group, Ltd.,* 2008 WI App 84, 312 Wis. 2d 636, 754 N.W.2d 235.

644

However, the court of appeals held that one allegation —that expenditures for due diligence for a potential acquisition of another company ultimately benefited only the majority shareholder[2]—would, if true, constitute a "dividend-like" payment to the majority shareholder and thus support a direct claim. The judicial dissolution claim[3] the circuit court had allowed to go forward encountered an unforeseen barrier at the court of appeals: while the appeal was pending, a forced merger eliminated the petitioner's status as a shareholder. A motion filed by the majority shareholder brought this to the court of appeals' attention. Ultimately, the court of appeals remanded with directions to enter an order to dismiss that claim on the grounds that the post-claim merger had stripped the petitioner of standing to pursue that claim.

¶ 3. Both the minority and majority shareholders involved sought review by this court of the rulings adverse to them. The minority shareholder, Edward Notz (Notz), appealed the court of appeals' decisions that first, he failed to state a direct claim for breach of fiduciary duty, and second, he had lost standing on the

---

[2] The majority shareholder ultimately acquired the company for itself.

[3] Wisconsin Stat. § 180.1430(2)(b) (2005–06):

The circuit court . . . may dissolve a corporation in a proceeding:

. . . .

(2) By a shareholder, if any of the following is established:

. . . .

(b) That the directors or those in control of the corporation have acted, are acting or will act in a manner that is illegal, oppressive or fraudulent.

All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

645

judicial dissolution claim due to the merger. The majority shareholder, Everett Smith Group, Ltd. (the Smith Group), cross-appealed the court of appeals' decision that the direct claim based on the allegations about due diligence costs could proceed.

¶ 4. For the reasons set forth herein, we affirm in part, reverse in part, and remand for further proceedings. We agree with the court of appeals that the claims of harm alleged—the loss of a corporate opportunity and the sale of a subsidiary with high growth potential —caused harm primarily to the corporation, and thus we affirm the dismissal of Notz's direct claim of breach of fiduciary duty as to those allegations. On the cross-appealed issue, we also agree with the court of appeals that the majority shareholder's appropriation of the due diligence paid for by the corporation resulted in a constructive dividend to the majority shareholder because it received a benefit at the expense of the minority shareholders. Thus we affirm the court of appeals' decision permitting that claim to proceed and remand to the circuit court for further proceedings.

¶ 5. Where we disagree with the court of appeals is on the question of Notz's standing to pursue his judicial dissolution claim. Wisconsin Stat. § 180.1106(1)(d) is straightforward in its requirement that a pending claim "may be continued as if the merger did not occur." Notz's judicial dissolution claim, initiated prior to the merger, alleged harm to that shareholder, not to the corporation. Because the statute precludes a merger from operating to strip such a claimant of the right to pursue a pending action, such as his direct action here, and because we find persuasive support for that position, we reverse the court of appeals' decision on that issue. We therefore remand that claim to the circuit court for further proceedings consistent with this opinion.

## I. BACKGROUND

¶ 6. The company at the center of this dispute, Albert Trostel & Sons (ATS), evolved and grew from its beginning as one of the tanneries that made Milwaukee a powerhouse in the leather industry in the late 1800s. The story of the company's growth includes names familiar to anyone with a passing knowledge of Wisconsin history: one of Albert Trostel's sons married into the Uihlein family, a major player in another of Milwaukee's then-thriving industries—the brewing of beer. Over the years, ATS acquired subsidiaries and branched out into production of rubber and plastics. Through a series of transactions, control of the company shifted from Trostel's descendants to Everett Smith, who was hired by ATS in 1938 and later became president of the company. Smith formed what would eventually become the Smith Group. At the time this action was commenced, ATS was owned 88.9 percent by the Smith Group, 5.5 percent by Notz, and 5.6 percent by other Trostel descendants who are not parties to this proceeding.[4]

¶ 7. By 2003, ATS's board of directors was comprised entirely of members who were also officers and/or directors of the Smith Group. The Smith Group began making offers to purchase the shares of ATS's minority shareholders. Notz rejected the offers.

¶ 8. At the same time, ATS turned its attention to the potential for growth in plastics. As part of this new strategy, its subsidiary, Trostel Specialty Elastomers Group, Inc. (Trostel SEG), in June 2003 acquired an

---

[4] Notz, the plaintiff-petitioner, is a descendant of Albert Trostel; the defendants-cross-petitioners are three directors of ATS who were affiliated with the Smith Group, and the Smith Group itself, now controlled in part by descendants of Everett Smith.

Iowa custom injection molding company, and ATS contemplated other acquisitions as well.

¶ 9. What happened next is the basis of Notz's claims. In June 2004 an opportunity presented itself for ATS to acquire the assets of Dickten & Masch, a competing plastics manufacturing business. ATS conducted due diligence. But in August 2004, the ATS board decided to pass on acquiring Dickten & Masch. Shortly thereafter, the Smith Group, which had no other direct holdings in the plastics field, acquired Dickten & Masch. Within months, the Smith Group's new Dickten & Masch affiliate purchased the assets of ATS's plastics subsidiary, Trostel SEG, from ATS.

¶ 10. In response to the Smith Group's acquisition of both plastics companies, Notz commenced an action[5] against the Smith Group and four of its directors on April 6, 2006. The initial complaint was dismissed, and

---

[5] Notz had also sent a demand letter to ATS, pursuant to Wis. Stat. § 180.0742, stating, "the minority shareholders are required to make a written demand for ATS to take action with regard to these derivative claims. This letter shall serve that purpose." The letter demanded, among other things, that the purchase of Trostel SEG by Dickten & Masch be rescinded and independent directors be elected to ATS's board. In response to Notz's letter and a similar letter from the other minority shareholders, on October 4, 2005, ATS elected three independent directors to ATS's board and created a special litigation committee to investigate the allegations in the demand letters. The special litigation committee consisted of the three independent directors. The committee subsequently issued a report concluding there was "no intentional behavior or maliciousness on the part of [ATS] fiduciaries to disadvantage the minority shareholders" and making certain recommendations that are not relevant to the questions we are concerned with here. No derivative claim was ever pursued by Notz; the dispute presented here centers on his direct claims.

an amended complaint was filed September 29, 2006, alleging breach of fiduciary duty by the Smith Group and breach of fiduciary duty by the individual directors, and requesting judicial dissolution pursuant to Wis. Stat. § 180.1430(2)(b) on the grounds that the defendants had acted in a manner that was oppressive to Notz.[6]

¶ 11. At a hearing held on November 22, 2006, the Milwaukee County Circuit Court, the Honorable John A. Franke presiding, found that the injuries alleged in the complaint were common to all shareholders, reasoning that any ancillary benefit the Smith Group received from the transaction did not create a direct injury. The circuit court dismissed Notz's claims of breach of fiduciary duty. However, it declined to dismiss the judicial dissolution claim based on allegedly oppressive conduct.

¶ 12. The court of appeals granted the parties' petitions to appeal the circuit court's order. While the appeal was pending, ATS initiated a cash-out merger under Wis. Stat. §§ 180.1101(2)(c) and 180.1103(3). Despite Notz's opposition,[7] the merger was approved and became effective May 17, 2007.[8] As noted above, the

---

[6] The amended complaint describes the oppressive conduct as "includ[ing], among other things, a concerted effort by the Smith Group and the Individual Defendants to oppress the Plaintiff and force him to sell his shares in ATS to the Smith Group for less than a fair value and to freeze Plaintiff out of the plastics business in retaliation for refusing to sell his shares at less than fair value."

[7] The other minority shareholders received cash for their shares. Notz perfected his dissenter's rights to have a court determine the fair value of his shares. That case is currently pending as a separate proceeding in the United States District Court for the Eastern District of Wisconsin. *See, infra,* ¶ 37 n.26.

[8] There are some procedural peculiarities in this case in that the record contains no documentation related to the

court of appeals affirmed the circuit court's holding that the breach of fiduciary duty claim was appropriately a derivative, rather than direct, claim on the grounds that "stripp[ing] Albert Trostel & Sons of its most important assets and divert[ing] to the Smith Group Trostel's corporate opportunity to buy Dickten and Masch . . . [was] an injury to Trostel" because "all of the shareholders were affected equally[.]" *Notz v. Everett Smith Group, Ltd.*, 2008 WI App 84, ¶ 17, 312 Wis. 2d 636, 754 N.W.2d 235. It carved out a portion of the claim, however, having to do with money spent for due diligence. Given the Smith Group's ultimate acquisition of Dickten & Masch, ATS's expenditures for due diligence ultimately benefited only that majority shareholder, the court of appeals reasoned, and thus constituted a constructive dividend. *Id.*, ¶ 18. As to the judicial dissolution claim, which had survived in the circuit court, the court of appeals found that an intervening event, the cash-out merger, had stripped the petitioner of standing to pursue the judicial dissolution claim because he was no longer a shareholder. *Id.*, ¶ 26. Therefore, the court of appeals remanded with an order to dismiss that claim for lack of standing. *Id.*

¶ 13. A petition and a cross-petition for review followed, and this court granted review.

merger because the record was already complete before it happened. The court of appeals accepted briefing on the merger's effect on Notz's judicial dissolution claim and clearly based its ruling on standing on the materials presented in those briefs; it did not permit the parties to supplement the record. The result was that the parties cited in their briefs here materials considered by the court of appeals that were never made part of the record. We therefore rely as well on the materials submitted to the court of appeals.

## II. STANDARD OF REVIEW

■

¶ 14. Whether a complaint by a minority share-holder has alleged facts that will support direct claims for breach of fiduciary duty presents questions of law reviewed de novo. *See Borne v. Gonstead Advanced Techniques, Inc.*, 2003 WI App 135, ¶ 10, 266 Wis. 2d 253, 667 N.W.2d 709.

■■

¶ 15. At the motion to dismiss stage,[9] the court must accept all facts alleged as true and construe "all reasonable inferences that may be drawn from those facts in favor of stating a claim." *Peterson v. Volkswagen of Am., Inc.*, 2004 WI App 76, ¶ 2, 272 Wis. 2d 676, 679 N.W.2d 840. A claim will be dismissed only if "it appears

---

[9] We recognize that material related to the merger was presented to the court of appeals in connection with motions made to that court and pursuant to an October 4, 2007, order, which stated,

> Although the court will not permit supplementation of the appellate record, the court recognizes that addressing the mootness issue may require consideration of materials not in the appellate record, since the materials were likely produced after the appeal was filed. Consequently, the court will allow the parties to refer in their briefs and appendices to materials submitted in the motion practice before this court that relate to the mootness issue.

We note that under the unusual circumstances presented here this material does not constitute "matters outside of the pleadings" under Wis. Stat. § 802.06(2)(b) (stating that where such matters are presented to the court, the motion is treated as one for summary judgment). The court of appeals appeared to treat this material as part of the pleadings. Under these circumstances, we see no reason to treat this as an action for summary judgment.

quite certain that no relief can be granted under any set of facts the plaintiffs might prove in support of their allegations." *Id.*

¶ 16. The application of a statute to undisputed facts is reviewed de novo. *DOR v. Menasha,* 2008 WI 88, ¶ 44, 311 Wis. 2d 579, 754 N.W.2d 95.

## III. THE BREACH OF FIDUCIARY DUTY CLAIMS

### A. Acquisitions of the plastics companies

¶ 17. Notz's claims of breach of fiduciary duty are primarily based on the series of transactions in which the Smith Group acquired two plastics companies.[10] The allegations are that the Smith Group, as ATS's majority shareholder, rejected the opportunity ATS had to buy Dickten & Masch; the Smith Group subsequently bought Dickten & Masch itself; and the Smith Group, in its capacity as majority shareholder, orchestrated the sale of ATS's valuable plastics group, Trostel SEG, to its own new acquisition.

¶ 18. The question is whether those allegations support direct claims for breach of fiduciary duty to a minority shareholder. The parties suggest different cases as guides for our analysis. The Smith Group argues that *Rose v. Schantz,* 56 Wis. 2d 222, 201 N.W.2d 593 (1972), requires a finding that these are derivative

---

[10] The amended complaint states,

Defendant Smith Group breached its fiduciary duty to the Plaintiff by engaging in two related self-dealing transactions that were intended to harm the Plaintiff, by failing to provide Plaintiff with prior notice of the proposed transactions at a time when Plaintiff could have objected and sought to stop the transactions, by orchestrating constructive dividends from ATS to the Smith Group, and by acting with the intent to harm the Plaintiff.

claims; Notz argues that the principles articulated in *Jorgensen v. Water Works, Inc.* (*Jorgensen II*), 2001 WI App 135, 246 Wis. 2d 614, 630 N.W.2d 230, and *Luther v. C.J. Luther Co.*, 118 Wis. 112, 94 N.W. 69 (1903), compel a finding that these are direct claims.

¶ 19. In *Rose,* minority stockholders sued for an injunction for breach of the fiduciary duties owed to them by the directors. *Rose,* 56 Wis. 2d at 223–24. The circuit court denied defendants' motion for summary judgment but was reversed by this court. *Id.* at 224, 230. We held that though each shareholder has an individual right to be treated fairly by the board of directors, when the injury from such actions is primarily to the corporation, there can be no direct claim by minority shareholders. *Id.* at 228–29.

¶ 20. In that case, we acknowledged the duty to individual shareholders but set important parameters.

> It is true the fiduciary duty of a director is owed to the individual stockholders as well as to the corporation. Directors in this state may not use their position of trust to further their private interests. Thus, where some individual right of a stockholder is being impaired by the improper acts of a director, the stockholder can bring a direct suit on his own behalf because it is his individual right that is being violated.

*Id.* (citations omitted). However, a right of action that belongs to the corporation cannot be pursued as a direct claim by an individual stockholder. *Id.* at 229. As we noted, even where the injury to the corporation results in harm to a shareholder,[11] it won't transform an action from a derivative to a direct one:

---

[11] We use the terms "shareholder" and "stockholder" interchangeably.

That such primary and direct injury to a corporation may have a subsequent impact on the value of the stockholders' shares is clear, but that is not enough to create a right to bring a direct, rather than derivative, action. Where the injury to the corporation is the primary injury, and any injury to stockholders secondary, it is the derivative action alone that can be brought and maintained. That is the general rule, and, if it were to be abandoned, there would be no reason left for the concept of derivative actions for the redress of wrongs to a corporation.

*Id.* at 229–30 (citations omitted).

¶ 21. Notz asserts that the principles of *Jorgensen II* and *Luther* apply here. In *Jorgensen II* the court of appeals found that where shareholder-directors stopped making distributions to some minority shareholders while continuing to pay themselves distributions, such shareholder-directors had breached their fiduciary duty, and the injury caused was primarily personal to the minority shareholders. *Jorgensen II,* 246 Wis. 2d 614, ¶¶ 18–19. In *Luther,* this court found that two shareholder-directors had breached their fiduciary duty when they orchestrated the sale of new shares to an ally in order to gain control of the company. *Luther,* 118 Wis. at 123. As for *Rose,* Notz would have us read it more narrowly, as holding that where the only harm alleged by a minority shareholder is the diminution of the value of the shares, and thus, harm to the corporation, there can be no direct claim.

¶ 22. Notz alleges self-dealing on the part of the majority shareholder, but the cases on which he relies do not stand for the proposition that a shareholder-director's self-dealing transforms an action that primarily injures the corporation into one that primarily injures a shareholder. It is clear from *Read v. Read,* 205

654

Wis. 2d 558, 556 N.W.2d 768 (Ct. App. 1996), that a majority shareholder's self-dealing may result in injury that is primarily to the corporation. In that case, Read, a minority shareholder, had alleged that the controlling stockholders had misappropriated corporate assets and engaged in self-dealing "through their transactions with other corporations in which they were stockholders but he was not." *Id.* at 562. The court of appeals disagreed that any injury was directly to him as the minority shareholder: "Here, as in the *Rose* case, Read's complaint alleges conduct that, if true, means that resulting primary injury is to the corporation, not the individual stockholder bringing the suit." *Id.* at 570.

¶ 23. We agree with the Smith Group that breach of fiduciary duty claims, based on the lost opportunity to purchase one company and the sale of a subsidiary with great growth potential, are governed by *Rose.* Our analysis under *Rose* centers on a determination of whether the primary injury is to the corporation or to the shareholder. *Rose* does not precisely define when an injury is "primar[ily] . . . to the corporation." *Rose,* 56 Wis. 2d at 229. *Jorgensen II* does, however, define the opposite, an injury "primarily . . . to an individual shareholder," as one which "affects a shareholder's rights in a manner distinct from the effect upon other shareholders." *Jorgensen II,* 246 Wis. 2d 614, ¶ 16. We agree with the court of appeals that the allegations here are essentially that the Smith Group "stripped [ATS] of its most important assets" and engaged in various acts of self-dealing, and that those are allegations of injury primarily to ATS. *Notz,* 312 Wis. 2d 636, ¶ 17. As the court of appeals noted, "*[A]ll* of the shareholders [of ATS] were affected equally" by the loss of the opportunity to acquire Dickten & Masch and by the sale of

Trostel SEG, the plastics division. *Id.* To hold otherwise would mean, as we said in *Rose,* that "there would be no reason left for the concept of derivative actions for the redress of wrongs to a corporation." *Rose,* 56 Wis. 2d at 230. The situation here involves, as the circuit court noted, "the majority's power to sell a part of a company to an entity that it has a hundred percent interest in . . . [a]t a fair price."[12] Such a transaction may give rise to a derivative claim for injury that is primarily to the corporation; under *Rose,* that is the only claim available.

B. The due diligence expenses

¶ 24. As noted above, however, the court of appeals did not fully close the door on Notz's direct claim of breach of fiduciary duty. Notz's amended complaint alleged that the Smith Group benefited from ATS's payment of due diligence expenses for the never-consummated acquisition of Dickten & Masch when it subsequently acquired Dickten & Masch for itself. In other words, as ATS majority shareholder, the Smith Group made the decision to let ATS pick up the tab for the due diligence, the benefits of which expense accrued only to the Smith Group, not to ATS's minority shareholders, when the Smith Group made the decision to

---

[12] It is clear from the case law applicable here that a derivative action is appropriate on the claim to the extent that it is based on the allegations concerning the Smith Group's purchase of Trostel SEG and Dickten & Masch. The approach advocated by the concurrence/dissent would create the possibility of direct actions wherever there are shareholders in common between a parent corporation selling a subsidiary and the purchasing corporation. *See* concurrence/dissent, ¶ 76. Such an unworkable approach would impose unnecessary costs and uncertainty on routine corporate transactions.

acquire Dickten & Masch on its own. The court of appeals viewed this allegation as supporting a direct claim of breach of fiduciary duty because the expense was, in the court's words, a "dividend-like payment[]."[13] *Notz,* 312 Wis. 2d 636, ¶ 18. It reasoned that this payment fit the description in *Jorgensen II,* which held that injury due to the act of shareholder-directors that affects a shareholder differently from others gives rise to a direct claim. *Id.*

¶ 25. On this claim at least, the parties have found common ground. Both argue that the court of appeals improperly distinguished Notz's constructive dividend from the rest of his fiduciary duty claims. Notz strenuously objects to analysis that would treat the due diligence expense claims differently than those concerning the majority shareholder's squandering of corporate opportunities and the sale of corporate assets to itself.[14] The Smith Group, for its part, strenuously objects to the applicability of *Jorgensen II* to the facts here and argues that the circuit court got it right when it wrote, "[T]he complaint alleges injuries that were common to the shareholders generally and the fact that some shareholders may have benefited in a way that balanced out that injury for them does not create a direct injury . . . ." The Smith Group says Notz has failed to

---

[13] The court of appeals also referred to the payment as a constructive dividend. *Notz,* 312 Wis. 2d 636, ¶ 18. In this opinion, we use the terms "dividend-like payment" and "constructive dividend" interchangeably. Examples of a constructive dividend include "excessive compensation, bargain purchases of corporate property, and shareholder use of corporate property." *Black's Law Dictionary* 513 (8th ed. 2004).

[14] "The distinction perceived by the Court of Appeals . . . lacks a coherent underpinning. Candidly, a consistent policy should apply in either case."

articulate an injury that he suffered separate from that allegedly suffered by all other ATS shareholders.

¶ 26. As just noted, an injury "primarily . . . to an individual shareholder" is one which "affects a shareholder's rights in a manner distinct from the effect upon other shareholders." *Jorgensen II,* 246 Wis. 2d 614, ¶ 16.

¶ 27. Here, the allegation is that as majority shareholder, the Smith Group got the direct and immediate benefit of the due diligence[15] expenditure as shareholders in the corporation that acquired Dickten & Masch. As a minority shareholder, Notz did not, as the court of appeals noted, receive an offsetting payment. *Notz,* 312 Wis. 2d 636, ¶ 18. The bottom line, as alleged in the complaint,[16] is that there was never any intention for the minority shareholder to benefit in any way from this due diligence expenditure because

> if the offer [to purchase] the stock was rejected[,] the Smith Group planned to freeze [Notz] out of the plastics business by transferring the entire plastics division from ATS to the Smith Group in two steps. First, the Smith Group rather than ATS would acquire Dickten & Masch. Second, the Smith Group would combine the Dickten operations with the Trostel SEG

---

[15] Due diligence is defined as "[a] prospective buyer's or broker's investigation and analysis of a target company, a piece of property, or a newly issued security." *Black's Law Dictionary* 488 (8th ed. 2004).

[16] As noted above at ¶ 15, at the motion to dismiss stage, the court must accept all facts alleged as true and construe "all reasonable inferences that may be drawn from those facts in favor of stating a claim." *Peterson v. Volkswagen of Am., Inc.,* 2004 WI App 76, ¶ 2, 272 Wis. 2d 676, 679 N.W.2d 840.

operations to achieve the synergy savings identified in the due diligence investigation by acquiring the ATS plastics division. After [Notz] rejected the Smith Group's offers to purchase his shares, Defendants proceeded with their plan to freeze out [Notz] from any interest in the ATS plastics business.

As the court of appeals noted, it was the Smith Group that was "the beneficiary of that expenditure." *Notz,* 312 Wis. 2d 636, ¶ 18. Such dividend-like payments were not made to Notz, and for that reason, Notz's rights as a shareholder were affected "in a manner distinct from the effect upon other shareholders." *Jorgensen II,* 246 Wis. 2d 614, ¶ 16. Here, cash that was part of the corporation's assets which could have been used to pay dividends was instead diverted to fund due diligence for a company that the majority shareholder later acquired. It is this type of inequitable treatment that was at issue in *Jorgensen II* because the defendants had "stopped paying [plaintiffs] the pro rata distribution from [the corporation's] cash flow while they continued to pay themselves regular distributions, they treated [plaintiffs] differently, and inequitably, when compared with the treatment accorded all other shareholders." *Jorgensen II,* 246 Wis. 2d 614, ¶ 18.

¶ 28. This is different from Notz's first claim, which is based on the majority shareholder's acquisition of Dickten & Masch and Trostel SEG. Those acquisitions, which effectively ended ATS' expansion into the plastics business, parallel the acts complained of in *Rose,* acts that were part of "a scheme or plan to deplete the corporation of its cash reserves, thereby rendering it incapable of continuing in business, and enabling [the defendant] to successfully engage in a competing business." *Rose,* 56 Wis. 2d at 224. The majority shareholder's decisions with regard to ATS's plastics

interest are alleged to do precisely the same thing: to render ATS incapable of continuing in that business and to enable itself to engage in a competing business. For that reason, the claim related to the purchase of Dickten & Masch is controlled by *Rose* because the injury is primarily to the corporation. The claim as to the due diligence expenses is factually more similar to the claim of unequal distributions alleged in *Jorgensen II,* as explained above, and is therefore properly governed by that analysis.

## IV. THE JUDICIAL DISSOLUTION CLAIM

¶ 29. The court of appeals remanded with an order to dismiss the judicial dissolution claim after a forced cash-out merger was instituted while the case was pending on appeal. *Notz,* 312 Wis. 2d 636, ¶ 26. Following that merger, Notz was no longer a shareholder in ATS.[17]

¶ 30. Notz argues that Wis. Stat. § 180.1106(1)[18] explicitly preserves all pending civil claims after a corporate merger. Subsection (d) states "a civil . . . pro-

---

[17] The Smith Group sought to have the judicial dissolution claim dismissed as moot; in its decision, the court of appeals characterized the question as one of standing instead. *Notz,* 312 Wis. 2d 636, ¶ 21.

[18] Wisconsin Stat. § 180.1106. Effect of merger or share exchange.

(1) All of the following occur when a merger takes effect:

. . . .

(d) A civil, criminal, administrative, or investigatory proceeding pending by or against any business entity that is a party to the merger may be continued as if the merger did not occur, or the surviving business entity may be substituted in the proceeding for the business entity whose existence ceased.

ceeding pending . . . against any business entity that is a party to the merger may be continued as if the merger did not occur . . . ." Wis. Stat. § 180.1106(1)(d). This statute is not limited or qualified in any way, Notz argues, and it expressly preserves the standing of plaintiffs with pending claims against merged corporations, and ensures that liability follows the merged entities.

¶ 31. The Smith Group argues that the merger statute cannot preserve a claim that Notz lacks standing to pursue.

¶ 32. The court of appeals agreed with the Smith Group; it held that the statute "does not address who is entitled to maintain a previously commenced action; it merely says that those actions survive." *Notz*, 312 Wis. 2d 636, ¶ 25.

¶ 33. As we have noted in other cases where we construed Wis. Stat. § 180.1106, this provision is based on Model Business Corporation Act § 11.07, "Effect of Merger or Share Exchange."[19] *See generally* Model Bus. Corp. Act Ann. § 11.07 (Supp. 1998/99) (listing all fifty states as having adopted this rule under the Model Business Corporation Act). While cases dealing with one aspect or another of this provision or its variations abound, the Smith Group has not pointed to any case precisely on point where this provision has been found

---

[19] "We note that this statute is based on the Model Business Corporation Act § 11.07 'Effect of Merger or Share Exchange.' We have previously utilized the official commentary to substantially similar Model Business Corporation Act statutes to inform our discussion of the legislative intent of Wisconsin Business Corporations statutes." *Farm Credit Serv. of N. Cent. Wis. v. Wysocki*, 2001 WI 51, ¶ 20 n.2, 243 Wis. 2d 305, 627 N.W.2d 444 (citing *Einhorn v. Culea*, 2000 WI 65, ¶ 29, 235 Wis. 2d 646, 612 N.W.2d 78).

to work the way the Smith Group says it must. It argues that the provision should be read as allowing a merger to strip shareholder status, and thus standing, from a plaintiff with a non-derivative claim that predates the merger.

██ ██

¶ 34. We begin by observing that a claim for judicial dissolution based on oppressive conduct, as here, is not a derivative claim. *See* 12B William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 5820.10 (rev. ed. 2000) ("An action for relief from oppressive conduct has been distinguished from a derivative action, since in the former the complaining shareholder is ordinarily seeking some type of individual relief, while in the latter the action is generally for relief on behalf of the corporation as well as other similarly situated shareholders.") Direct claims of a shareholder predating a merger have been upheld, even when brought by a shareholder who after filing the claim lost shareholder status, on the basis that this statute preserves such claims. For example, after determining that some of the plaintiff's claims "state[d] personal, as opposed to derivative, causes of action," the Connecticut Supreme Court addressed the effect of the merger on such claims under Connecticut's statute, which like Wisconsin's was based on the Model Business Corporation Act:[20]

> Nor does the fact of the [corporation's] merger prohibit the plaintiff from proceeding in an individual capacity

---

[20] *All Brand Importers, Inc. v. Dept. of Liquor Control,* 567 A.2d 1156, 1163 (Conn. 1989) (discussing General Statutes § 33–369, "Effect of merger or consolidation," and stating, "[t]he Connecticut statute on the effect of merger or consolidation was based on the ABA-ALI Model Business Corporation Act (1969) § 76 . . .").

against [defendants]. The provisions of s. 33–369(e) of the General Statutes clearly state that the post-merger, surviving corporation shall be responsible for the liabilities, including liability to dissenting shareholders, of each of the merging corporations, and that any claim existing at the time of merger against one of the corporations may be prosecuted as if the merger had not taken place. Put another way, the merger does not destroy the existing liabilities and obligations of the individual corporations; to hold otherwise would depart from the clear mandate of the statute and allow for perpetration of a fraud upon corporation creditors or others who, like the plaintiff, possess outstanding claims against the merged corporation.

*Yanow v. Teal Indus.*, 422 A.2d 311, 322 (Conn. 1979). That court went on to distinguish derivative claims by noting that a derivative claim "could only be pursued by one who was a stockholder . . . both at the time of the alleged corporate delict and at the time of the filing of suit." *Id.* at 323. We have not located any case where a merger was permitted to strip a shareholder of standing he indisputably held at the commencement of the claim.[21]

---

[21] For cases that turn on the holding of shareholder status when an action is commenced, see *Crippin Printing Corp. v. Abel,* 441 N.E.2d 1002, 1004 (Ind. Ct. App. 1982) (concluding that an agreement obligating a shareholder whose employment is terminated to sell stocks does not deprive plaintiff "of standing to bring suit . . . *prior to the actual sale or transfer* of his stock"); *Artigas v. Renewal Arts Realty Corp.*, 22 A.D.3d 327, 328 (N.Y. App. Div. 2005) (affirming dismissal of petitions for dissolution "because petitioner sold his interests in these corporations . . . *before bringing his petitions*"); *Martin Enter., Inc. v. Janover,* 140 A.D.2d 587, 587 (N.Y. App. Div. 1988) (finding that petitioner was without standing because *"[p]rior to commencement* of the dissolution proceeding, the petitioner . . . was

¶ 35. Far from finding authority in favor of allowing a merger to defeat a pending direct or non-derivative claim, we have found significant case law that supports the opposite inference. Delaware, a jurisdiction to which Wisconsin courts often look for "guidance on corporate law,"[22] recognizes a relevant exception to the general rule that a loss of standing as a shareholder for any reason, including a merger, is fatal to a derivative claim.[23] Under Delaware law, the exceptions to that well-settled rule include when a merger is "perpetrated merely to deprive shareholders of the standing to bring a derivative action[.]" *Kramer v. W. Pac. Indus., Inc.,* 546 A.2d 348, 354 (Del. 1998); *see also In re First Interstate Bancorp Consol. S'holder Litig.,* 729 A.2d 851, 867 (Del. Ch. 1998).

---

divested of her interest in the corporation under an option agreement for repurchase of stock . . .") (emphasis added).

[22] *Lane v. Sharp Packaging Sys., Inc.,* 2002 WI 28, ¶ 81, 251 Wis. 2d 68, 640 N.W.2d 788 (Abrahamson, C.J., dissenting) (citing *HMO-W Inc. v. SSM Health Care Sys.,* 2000 WI 46, ¶¶ 29–31, 38, 234 Wis. 2d 707, 611 N.W.2d 250 (following Delaware law in rejecting application of minority discount in determining "fair value" in dissenters' rights proceeding); *Jacobson v. Am. Tool Cos.,* 222 Wis. 2d 384, 397, 588 N.W.2d 67 (Ct. App. 1998) (looking to Delaware law to define fiduciary duties); *Advance Concrete Form, Inc. v. Accuform, Inc.,* 158 Wis. 2d 334, 344, 462 N.W.2d 271 (Ct. App. 1990) (citing Delaware cases to determine whether request to inspect corporate documents was for a "proper purpose"); *Schweiner v. Hartford Accident & Indem. Co.,* 120 Wis. 2d 344, 351, 354 N.W.2d 767 (Ct. App. 1984) (citing Delaware law for effect of statutory merger on liabilities of merger corporation)).

[23] 13 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 5972.40 (rev. ed. 2004) ("Where there has been a cash-out merger, a former shareholder cannot maintain a derivative proceeding because the plaintiff would no longer have any interest in a subsequent corporate recovery.").

¶ 36. Notz has never pursued a derivative claim in this action, and, as noted above, his judicial dissolution claim is not a derivative claim.[24] Delaware's narrow exception to loss of standing as a shareholder is instructive: it illustrates the courts' recognition that mergers can be used fraudulently to attempt to strip plaintiffs of the opportunity, based on the lack of standing or on mootness, to pursue previously filed claims.[25]

---

[24] Notz's amended complaint in regard to his direct dissolution claim seeks from the circuit court at least the following remedies:

D. For an order pursuant to § 180.1430(2), Wis. Stats., ordering the dissolution of ATS;

E. For appointment of a receiver pursuant to § 180.1432, Wis. Stats., to dispose of the assets of ATS (including its equitable interest in Dickten & Masch and Trostel SEG) through a public sale to one or more third parties;

F. For an award of damages as compensation for injuries suffered by Plaintiff as the result of Defendants' oppressive conduct, in an amount to be determined at trial;

G. For an award of punitive damages in an amount to be determined at trial;

H. For the costs and disbursements of this action; and

I. For such other relief as may be equitable and just under the circumstances.

[25] This is indeed what Notz alleges occurred in this instance, and there was persuasive information submitted to the court of appeals in support of this contention. In a document titled "Information Statement for Special Meeting of Shareholders To Be Held On May 17, 2007," under the subheading "Primary Reasons For The Merger," is a subheading entitled "Protection Against Judicial Dissolution." The text describes the pending litigation between Notz and ATS and says, "[O]ur board of directors believes that the completion of the merger will serve the best interests of our company and our shareholders by making the minority shareholder's dissolution claim

¶ 37. The language of the statute is remarkably clear and is cast in the broadest of terms: "A civil, criminal, administrative, or investigatory proceeding *pending by or against* any business entity that is a party to the merger *may be continued as if the merger did not occur*, or the surviving business entity may be substituted in the proceeding for the business entity whose existence ceased." Wis. Stat. § 180.1106(1)(d) (emphasis added). In applying the text of the statute to the facts in the instant case, it is important to note that the civil proceeding instituted by Notz was pending at the time of the merger. The statute could hardly be written more explicitly to preserve such a claim: "as if the merger did not occur." If the merger did not occur, Notz would not have been forced out as a shareholder, and the claim would continue. Therefore, we are satisfied that the judicial dissolution claim may continue.[26] The circuit

moot and, as a result, eliminating any risk that the minority shareholder's dissolution claim will be successful."

[26] The parties have made reference to a separate, somewhat related action that was filed in United States District Court, the Eastern District of Wisconsin, after the ATS merger. In that action, Notz is pursuing an appraisal of his shares. That action was filed after the instant case; neither the parties nor the issues are identical. As the district judge noted in denying Notz's motion to stay the federal proceedings, "[T]his action is only concerned with the impact that any misconduct has on the value of shares whereas the state court proceeding which arises from breach of duty and shareholder oppression claims can only address appraisal indirectly." *Albert Trostel & Sons v. Notz,* 536 F. Supp. 2d 969, 983 (E.D. Wis. 2008). In both Notz's dissolution claim, based on oppression, and in the pending federal appraisal action, the determination of the fair value of the shares Notz held in ATS may be one of the issues. We expect that, regardless of which proceeding concludes first, the parties will undoubtedly bring to the courts' attention any concerns about potential

court should consider the judicial dissolution claim based on oppression in light of the allegations set forth in Notz's amended complaint. Under the circumstances, Notz has not lost standing.

## V. CONCLUSION

¶ 38. For the reasons set forth above, we affirm in part, reverse in part, and remand for further proceedings. We agree with the court of appeals that the claims of harm alleged—the loss of a corporate opportunity and the sale of a subsidiary with high growth potential —caused harm primarily to the corporation, and thus we affirm the dismissal of Notz's direct claim of breach of fiduciary duty as to those allegations. On the cross-appealed issue, we also agree with the court of appeals that the majority shareholder's appropriation of the due diligence paid for by the corporation resulted in a constructive dividend to the majority shareholder because it received a benefit at the expense of the minority shareholders. Thus we affirm the court of appeals'

duplication of remedies flowing from the federal appraisal action and the state dissolution action. *See HMO-W Inc. v. SSM Health Care System,* 2000 WI 46, ¶¶ 18, 31, 52, 234 Wis. 2d 707, 611 N.W.2d 250 (discussing the post-merger determination of fair value of dissenters' shares in an action under Wis. Stat. § 180.1302 (not Wis. Stat. § 180.1430(2), under which Notz makes his claim)); and Robert Rabbat, *Application of Share-Price Discounts and Their Role in Dictating Corporate Behavior: Encouraging Elected Buy-Outs Through Discount Application,* 43 Willamette L. Rev. 107 (Winter 2007) (discussing "the considerations that control the price at which the majority [shareholder] can lawfully eliminate the minority" and noting that "in states that provide for it, a controlling shareholder can exercise his option to buy-out the complaining shareholder and avoid oppression litigation altogether" (Wisconsin statutes do not provide this option.)).

decision permitting that claim to proceed and remand to the circuit court for further proceedings.

¶ 39. Where we disagree with the court of appeals is on the question of Notz's standing to pursue his judicial dissolution claim. Wisconsin Stat. § 180.1106(1)(d) is straightforward in its requirement that a pending claim "may be continued as if the merger did not occur." Notz's judicial dissolution claim, initiated prior to the merger, alleged harm to that shareholder, not to the corporation. Because the statute precludes a merger from operating to strip such a claimant of the right to pursue a pending action, such as his direct action here, and because we find persuasive support for that position, we reverse the court of appeals' decision on that issue. We therefore remand that claim to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and remanded to the circuit court for further proceedings consistent with this opinion.

¶ 40. ANNETTE KINGSLAND ZIEGLER, J., did not participate.

¶ 41. PATIENCE DRAKE ROGGENSACK, J. *(concurring)*. I agree with, and join the majority opinion's conclusion that, with the exception of Albert Trostel & Sons' (ATS) expenditures for due diligence related to the potential acquisition of Dickten & Masch, LLC, the complaint fails to state a direct claim for breach of fiduciary duty, because the harm alleged is primarily to the corporation, not to Edward Notz (Notz).[1] I also agree with and join in the majority opinion's conclusion

---

[1] Majority op., ¶ 4.

that the complaint has stated a claim for relief sufficient to survive dismissal in regard to a direct injury to Notz based on the Dickten & Masch due diligence expenses paid by ATS.[2]

¶ 42. And finally, I agree with the majority opinion's conclusion that Notz's claim for dissolution of ATS may proceed, albeit on a different rationale. I would allow the claim to proceed because it is all about money, i.e., how much money can Notz get for the shares he held in ATS. The amount of the payment due Notz is yet to be determined.

¶ 43. I write separately to point out that Notz's claim for judicial dissolution of ATS is proceeding at the same time as is his claim for dissenter's rights due to the merger of ATS into Dickten & Masch. Both claims will provide the same remedy if Notz is able to prove grounds for dissolution; i.e., the fair value of Notz's ATS shares will be paid to him. His dissenter's rights claim is pending in a federal court action, where the fair value of his ATS shares is being adjudicated.[3]

¶ 44. In regard to these two claims, I make three points. First, Notz must prove that grounds for dissolution exist or that claim will be dismissed.[4] Wis. Stat. § 180.1433. Second, even if Notz is able to prove oppres-

---

[2] *Id.*

[3] *See Albert Trostel & Sons Co. v. Notz,* Case No. 07–C–0763, United States Dist. Ct., E. Dist. of Wisconsin.

[4] Notz has alleged oppression, pursuant to Wis. Stat. § 180.1430(2)(b). The circuit court will be required to determine whether issue preclusion bars further proof of oppression, given that this issue was among those already addressed by the Special Litigation Committee to the Board of Directors of Albert Trostel & Sons Company in its report dated June 15, 2006 (the Report). Joint App. at 95. Notz did not challenge the Special Litigation Committee's conclusions.

sion, the legislature has decided that ATS, the corporation Notz seeks to dissolve, no longer exists due to ATS's merger into the Everett Smith Group, Ltd. (the Smith Group). Wis. Stat. § 180.1106(1)(a). Therefore, there is no corporation to dissolve, and a cash payment is all Notz can receive. Third, due to the merger of ATS, Notz requested to be paid the fair value of his shares in ATS, pursuant to Wis. Stat. § 180.1323. Accordingly, when this case is returned to the circuit court, if grounds for dissolution are proved, the determination of what, if anything, will be paid to Notz must await the federal court's determination of the fair value because Notz is not entitled to be paid twice for the fair value of his interest in ATS.

## I. BACKGROUND

¶ 45. Notz was displeased with the management of ATS. He complained that the board of directors decided not to purchase Dickten & Masch, a plastics company, and instead caused the Smith Group to purchase it. He also alleged that selling the assets of ATS's wholly owned subsidiary, Trostel SEG, to Dickten & Masch was not in the best interests of ATS. Notz made demands upon ATS's board of directors pursuant to Wis. Stat. § 180.0742 to correct actions he believed were damaging ATS.[5]

¶ 46. Notz alleged that the Smith Group, who was the majority shareholder of ATS, breached its fiduciary duty by:

> (1) purchasing an interest in Dickten & Masch LLC—a clear usurpation of an ATS opportunity; (2) causing the sale of the thermoplastics business of Trostel SEG (an

---

[5] August 2, 2005 demand letter, Joint App. at 106.

ATS subsidiary) to Dickten & Masch LLC—a conflict of interest; (3) avoiding the declaration of dividends, despite cash reserves of over $82 million, until offering dividends initially conditioned upon approval of the sale of the ATS interest in [the] thermoplastics business to the Smith Group; (4) failing to disclose to the minority shareholders of ATS the administrative expenses of ATS (particularly insider compensation); (5) transferring the ATS pension plan to the Smith Group without explanation; and (6) engaging in bad faith negotiations to buy the shares of minority shareholders.[6]

¶ 47. In response to Notz's demands, pursuant to Wis. Stat. § 180.0744(2)(b), ATS convened a Special Litigation Committee to evaluate Notz's claims. The Special Litigation Committee was composed of three independent directors who investigated and evaluated the facts relating to Notz's demand that the corporation take certain actions.[7] The Special Litigation Committee hired appraisers and met in excess of 20 times to conduct an investigation and to evaluate the allegations in Notz's demand letter.[8]

¶ 48. Upon the conclusion of its investigation and evaluation, the Special Litigation Committee advised Notz as follows: (1) ATS's board of directors would continue to include at least three independent directors with specified duties relative to minority shareholders, and (2) the Smith Group would pay $1,500,000 to ATS.[9] Beyond these two concessions, the Special Litigation Committee concluded that it was in the best interests of ATS to take no further action regarding the matters

---

[6] *Id.* at 107.

[7] The Report, Joint App. at 92–93.

[8] *Id.* at 92.

[9] *Id.* at 93.

raised by Notz's demands.[10] The Special Litigation Committee came to this conclusion after "exercising [its] informed business judgment after conducting, and based upon, a reasonable inquiry."[11] The Special Litigation Committee also concluded that it had "identified no intentional behavior or maliciousness on the part of [ATS] fiduciaries to disadvantage the minority shareholders."[12] The Special Litigation Committee concluded that, in regard to the Notz demands,

> no further action by [ATS] is warranted or in [ATS's] best interests concerning the allegations regarding (i) [ATS's] failure to declare dividends; (ii) the administrative expenses charged to [ATS] by [the Smith Group]; (iii) the negotiations for the purchase of shares held by the minority shareholders; (iv) the consolidation of [ATS's] pension plan; and (v) the claim of oppression of the minority shareholders.[13]

The Special Litigation Committee then stated that with "the fulfillment of the commitments detailed above, including the payment of $1.5 million to [ATS, the Special Litigation Committee] effectively and adequately responds to the matters raised in the Demand Letters that could be addressed in an action brought on [ATS's] behalf. ... [B]ased upon our reasonable inquiry, ... it is in the best interest of [ATS] to take no further action on the matters raise[d] in the Demand Letters."[14]

¶ 49. Notz did not challenge any of the conclusions of the Special Litigation Committee. Instead, he

[10] *Id.*

[11] *Id.*

[12] *Id.* at 94.

[13] *Id.* at 95.

[14] *Id.*

began the action that is before us, in which he has made many of the same allegations that he made in his Wis. Stat. § 180.0742 demands, and which the Special Litigation Committee has already addressed.

¶ 50. Subsequent to Notz's filing his claim for judicial dissolution of ATS, ATS was merged into Dickten & Masch, a wholly owned subsidiary of the Smith Group. Notz was served with a notice of dissenter's rights, pursuant to Wis. Stat. § 180.1322. When that occurred, Notz demanded payment for his shares in ATS, thereby meeting his obligations under Wis. Stat. § 180.1323. Notz demanded payment at a price acceptable to him pursuant to Wis. Stat. § 180.1328. ATS did not accept Notz's price demand, but instead, ATS filed a court action to determine the fair value of Notz's shares. Wisconsin Stat. § 180.1330 required ATS to do so. That action is currently pending in the United States District Court for the Eastern District of Wisconsin.[15]

## II. DISCUSSION

### A. Standard of Review

¶ 51. The review before us arose from a motion to dismiss for failure to state a claim. We independently review such a motion as a question of law. *John Doe 1 v. Archdiocese of Milwaukee,* 2007 WI 95, ¶ 12, 303 Wis. 2d 34, 734 N.W.2d 827. In so doing, we accept the facts alleged in the complaint as true. *Id.* However, we are not required to accept a plaintiff's legal conclusions. *Id.* Whether the facts alleged in a complaint are sufficient to constitute oppression is a question of law for our independent review. *Reget v. Paige,* 2001 WI App 73, ¶ 11, 242 Wis. 2d 278, 626 N.W.2d 302.

---

[15] *Supra,* note 3.

## B. Dissolution

¶ 52. Notz has asserted a claim for judicial disso-
lution of ATS, thereby invoking Wis. Stat. § 180.1430
(grounds for dissolution) and Wis. Stat. § 180.1431 (pro-
cedure for judicial dissolution). Dissolution is a harsh
remedy, especially when the corporation is a going con-
cern, as was ATS. *See Pueblo Bancorporation v. Lindoe,
Inc.*, 37 P.3d 492, 496 (Colo. Ct. App. 2001). Even when
grounds for dissolution are proven, it "is well-settled that
dissolution of a solvent corporation is a drastic measure
to be invoked only in extreme circumstances." *Cerami v.
Dignazio*, 424 A.2d 881, 889 (Pa. Super. Ct. 1980).

¶ 53. The majority opinion has concluded that all
except one of the allegations in the amended complaint
cannot be proceeded upon by Notz because they allege
harm that is primarily to ATS.[16] Those allegations
therefore are not relevant to Notz's claim for dissolu-
tion based on the claim that he, personally, was op-
pressed by the Smith Group. However, the majority
opinion has permitted one of Notz's claims, that "ATS
funds were used to complete the due diligence"[17] for the
purchase of Dickten & Masch by the Smith Group, to
proceed. The majority opinion permits this claim to
proceed in order to determine whether it was in reality
a dividend-like payment to the Smith Group that Notz
was not permitted to share.[18] Whether this claim is
sufficient to constitute oppression will depend upon
whether Notz is able to prove this allegation, and upon
the defenses that the Smith Group raises in response.

---

[16] Majority op., ¶ 4.

[17] Amended Complaint, ¶ 31.

[18] Majority op., ¶¶ 24–28.

## 1. Fair value

¶ 54. As explained above, petitions for dissolution rarely result in the actual dissolution of a corporation. *Id.* It is also instructive to note that many jurisdictions have adopted Model Business Corporation Act § 14.34, "Election to Purchase in Lieu of Dissolution," wherein a corporation or the other shareholders can elect to purchase all the shares held by the shareholder who seeks dissolution.[19] Under the Model Business Corporation Act, the parties are to try to come to an agreement on the fair value of the shares to be purchased.[20] However, if the parties do not come to an agreement on price, the court will determine the fair value of the shares on the day before the petition for dissolution was filed.[21] Notz's petition for dissolution was filed September 29, 2006.

¶ 55. The Model Business Corporation Act does not describe the components of fair value under § 14.34 when an action for dissolution is pending. However, the official comments to § 14.34 explain that it may be "useful to consider valuation methods that would be relevant to a judicial appraisal of shares under section 13.30." Section 13.30 of the Model Business Corporation Act is the section that addresses the judicial determination of fair value during a dissenter's rights action subsequent to a corporate merger. This is the same type of action Notz has pending in federal district court pursuant to Wis. Stat. § 180.1330.

---

[19] Model Business Corporation Act § 14.34(a); *see, e.g.,* Ala. Code § 10–2B-14.30; Alaska Stat. § 10.06.630; Ariz. Rev. Stat. Ann. § 10–1434; Cal. Corp. Code § 2000 (West).

[20] Model Business Corporation Act § 14.34(c).

[21] *Id.,* § 14.34(d).

¶ 56. Wisconsin does not have an Election to Purchase provision in its Business Corporation Act. The absence of a Wisconsin provision parallel to § 14.34 of the Model Business Corporation Act may be due to the fact that § 14.34 was added to the Model Business Corporation Act in 1990 and Wisconsin enacted its Business Corporation Act prior to 1990. However, Wis. Stat. § 180.1330, which provides for determination of the fair value of a dissenter's shares subsequent to a merger, is the parallel provision to the fair value determination of § 13.30 of the Model Business Corporation Act. Therefore, the legislature has provided the components that it has concluded are relevant to determining fair value.[22] In addition, we have addressed the components of fair value in a dissenter's rights action. *HMO-W Inc. v. SSM Health Care Sys.*, 2000 WI 46, 234 Wis. 2d 707, 611 N.W.2d 250.

## 2. Merger

¶ 57. Section 180.1330 is important to the circuit court's consideration of Notz's dissolution claim because ATS has merged into Dickten & Masch. When a corporation is merged into another corporation, Wis. Stat. § 180.1106(1)(a) controls subsequent consider-

---

[22] Courts in other jurisdictions have concluded that fair value in a dissenter's rights action subsequent to merger is equivalent to fair value determined subsequent to a petition for dissolution. *See e.g., Balsamides v. Protameen Chemicals, Inc.,* 734 A.2d 721, 733 (N.J. 1999) (concluding that fair value in an action alleging oppression means the same thing as fair value in a dissenting shareholder action); *Robblee v. Robblee,* 841 P.2d 1289, 1294 (Wash. Ct. App. 1992) (concluding that fair value in a dissenter's rights action is equivalent to fair value in an action based on oppression).

ation of the merged corporation and the shares held in that corporation. Section 180.1106(1) provides in relevant part:

(1) All of the following occur when a merger takes effect:

(a) Every other business entity that is party to the merger merges into the surviving business entity, and the separate existence of every business entity that is a party to the merger, except the surviving business entity, ceases.

. . .

(b) The title to all property owned by each business entity that is party to the merger is vested in the surviving business entity without reversion or impairment.

. . .

(f) The shares . . . of each business entity that is party to the merger that are to be converted into . . . cash or other property are converted, and the former holders of the shares or interests are entitled only to the rights provided in the articles of merger or to their rights under ss. 180.1301 to 180.1331 or otherwise under the laws applicable to each business entity that is party to the merger.

Because of ATS's merger into Dickten & Masch, ATS no longer exists. § 180.1106(1)(a). Because the merger was a cash-out merger, Notz's shares in ATS were converted to cash. § 180.1106(1)(f). Therefore, the most that can result from Notz's dissolution claim is a determination of the fair value of Notz's former shares in ATS.

¶ 58. Notz's conduct shows he understands the effect of the merger on his former shares in ATS, as he filed a claim asserting dissenter's rights pursuant to

677

Wis. Stat. § 180.1323. Notz requested payment for his former shares of ATS at a price acceptable to him pursuant to Wis. Stat. § 180.1328. When ATS did not agree to pay what Notz requested, ATS filed a court action to determine the fair value of his shares as it was required to do by Wis. Stat. § 180.1330.

¶ 59. Therefore, in the action before us, any determination of the fair value of Notz's shares must await the fair value determination by the United States District Court for the Eastern District of Wisconsin, where a statutory action to make that determination is currently pending.[23] Notz is not entitled to be paid twice for the fair value of his former shares in ATS— once due to his claim for dissenter's rights in the merger proceedings, and once as the only viable alternative for a proven claim of dissolution.

¶ 60. Why Notz would choose to continue with his claim for dissolution is a mystery to me. However, until fair value is determined by the United States District Court, I will go along with the majority opinion's decision to permit Notz's claim for dissolution to proceed. Accordingly, I respectfully concur.

¶ 61. I am authorized to state that Justice MICHAEL J. GABLEMAN joins this concurrence.

¶ 62. ANN WALSH BRADLEY, J. (*concurring in part, dissenting in part*). I agree with the majority that the judicial dissolution claim may continue and that Notz has a direct claim for breach of fiduciary duty relating to the due diligence expenses. I disagree with the majority, however, that Notz's claim for breach of fiduciary duty arising out of corporate usurpation is a derivative rather than a direct claim and that it thus must be dismissed.

---

[23] *Supra,* note 3.

¶ 63. Instead, based on the facts alleged in the amended complaint, I conclude that Notz states a direct claim for breach of fiduciary duty arising out of the defendants' usurpation of a corporate opportunity. The defendants breached their fiduciary duty to minority shareholders by using their position of trust to further their private interest. Unlike the majority shareholders, Notz was denied continued participation in a thriving growth industry. This injury was unique to him.

¶ 64. Further, I conclude that the majority fails to articulate and apply a consistent analysis. It provides no principled distinction justifying the disparate treatment of the two breach of fiduciary duty claims. Accordingly, I concur in part and dissent in part.

¶ 65. As we have previously explained, when an injury is primarily to a shareholder, that shareholder can bring a direct cause of action. *Rose v. Schantz,* 56 Wis. 2d 222, 228–29, 201 N.W.2d 593 (1972). When the injury is primarily to the corporation, a shareholder derivative action is appropriate. *Id.* at 229. Our case law, however, has provided scant guidance for determining whether an injury is primarily to the shareholder or primarily to the corporation.

¶ 66. Presented with a difficult case, the majority splits the difference. According to the majority, when the directors and majority shareholder[1] usurp a corporate opportunity and sell the corporation's most valuable asset to their own competitive enterprise, the injury is primarily to the corporation. The majority explains that this is because "[a]ll of the shareholders []

---

[1] Notz brought suit against ATS's controlling shareholder, the Smith Group, and four of ATS's officers and directors, all of whom belong to the Smith Group. I will refer to ATS's officers, directors, and controlling shareholder collectively as the "Smith Group" or "the defendants."

were affected equally." Majority op., ¶ 23. However, when corporate assets are spent for due diligence in furtherance of such a scheme, the majority concludes that the injury is primarily to the minority shareholder. It explains that this is because the defendants "received a benefit at the expense of the minority shareholders" and "there was never any intention for the minority shareholder to benefit in any way from this due diligence expenditure[.]" Majority op., ¶¶ 4, 27.

## I

¶ 67. I disagree with the majority's conclusion that the Smith Group's breach of fiduciary duty for usurpation gives rise to only a derivative claim. In *Rose,* we stated, "where some individual right of a stockholder is being impaired by the improper acts of a director, the stockholder can bring a direct suit on his own behalf because it is his individual right that is being violated." *Rose,* 56 Wis. 2d at 228–29. Thus, to determine whether an injury is to the corporation, to the individual shareholders, or to both,[2] the court must begin by identifying the right that has been violated.

¶ 68. Fiduciary duties confer legal rights. In Wisconsin, officers and directors owe a fiduciary duty to shareholders to act in good faith and to treat each shareholder fairly. *Id.* at 228. "[T]he directors and officers of a corporation owe a fiduciary duty to not use

---

[2] A single course of conduct may give rise to both direct and derivative claims "when there are duties owing both to a corporation and to a stockholder personally." *Johnson v. Am. Gen. Ins. Co.,* 296 F. Supp. 802, 808 (D.D.C. 1969); *see also Buschmann v. Professional Men's Ass'n,* 405 F.2d 659, 661–62 (7th Cir. 1969); *Vickers v. First Miss. Nat'l Bank,* 458 So.2d 1055, 1063–64 (Miss. 1984); *Empire Life Ins. Co. Am. v. Valdak Corp.,* 468 F.2d 330, 335 (5th Cir. 1972).

their positions for their own personal advantage . . . to the detriment of the interests of the stockholders of the corporation." *Borak v. J.I. Case Co.,* 317 F.2d 838, 842 (7th Cir. 1963) (applying Wisconsin law).

¶ 69. That same fiduciary duty is also owed by majority shareholders to minority shareholders: "The same fiduciary duty is due from a dominant or controlling shareholder or group of shareholders to the minority as is due from the director of a corporation to the shareholders." 12B William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 5810 (perm. ed., rev. vol. 2000) (*citing Grognet v. Fox Valley Trucking Serv.,* 45 Wis. 2d 235, 172 N.W.2d 812 (1969)).

¶ 70. Officers, directors, and controlling shareholders breach their fiduciary duties when they treat minority shareholders "differently, and inequitably," or when they "use their position of trust to further their private interests." *See Jorgensen v. Water Works, Inc.* (*Jorgensen II*), 2001 WI App 135, ¶¶ 10, 17–18, 246 Wis. 2d 614, 630 N.W.2d 230; *see also Rose,* 56 Wis. 2d at 228. "If through that control a sale of the corporate property is made and the property acquired by the majority, the minority may not be excluded from a fair participation in the fruits of the sale." *S. Pac. Co. v. Bogert,* 250 U.S. 483, 488 (1919).

¶ 71. Notz asserts that the Smith Group identified the thermoplastics business as a growth industry critical to the future success of ATS.[3] In 2004, the Smith Group learned of an opportunity to acquire Dickten & Masch, a direct competitor of ATS's thermo-

---

[3] Specifically, the amended complaint alleges that the defendant and president of ATS explained in 2003, "We have a very focused acquisition strategy in the rubber and plastics platform that will provide additional scale for their future growth."

plastics business. Notz alleges that the Smith Group determined through a due diligence investigation that "acquiring Dickten & Masch and combining it with the ATS plastics operations would result in substantial positive synergies." Instead of authorizing ATS's purchase, the Smith Group caused ATS to pass on the sale and then bought both Dickten & Masch and ATS's plastics division itself. Notz further alleges that the defendants breached their fiduciary duties, and that this breach inflicted an injury on him that the majority shareholders did not suffer.

¶ 72. The Smith Group had an interest in owning 100 percent of a thriving thermoplastics business. However, the Smith Group would own only 89 percent of this business if ATS purchased Dickten & Masch. Thus, Notz asserts, the Smith Group decided to purchase both Dickten & Masch and ATS's plastics business. The Smith Group's interest in fully owning these businesses was adversarial to Notz's interest in maintaining holdings in the plastics industry. The defendants used their positions of trust and control to further their own private interest at Notz's expense. Under these alleged facts, the defendants breached their fiduciary duties to minority shareholders by favoring the corporation in which they had a 100 percent ownership interest. *See* Fletcher, *supra,* § 5764.

¶ 73. Whether Notz can maintain his direct action depends on whether the injury was primarily to him, or primarily to the corporation. *See* majority op., ¶ 23. For determining when an injury is "primarily to the corporation," Wisconsin case law provides no explicit test. *See id.* As the majority acknowledges, the only articulated test is for an injury "primarily to an individual shareholder." *Id.*

682

¶ 74. An injury is primarily to the shareholder when it "affects a shareholder's rights in a manner distinct from the effect upon other shareholders." *Id.* (*citing Jorgensen II,* 246 Wis. 2d 614, ¶ 16.) When a breach of a fiduciary duty "inflict[s] a harm on [the minority shareholder] that other shareholders did not suffer," the minority shareholder has a direct cause of action. *See Jorgensen II,* 246 Wis. 2d 614, ¶ 18.[4]

¶ 75. After setting forth the test for when an injury is primarily to the shareholder, and with only cursory explanation, the majority summarily concludes: "All of the shareholders of ATS were affected equally by the loss of the opportunity to acquire Dickten & Masch and by the sale of [Trostel's] plastics division." Majority op., ¶ 23.

¶ 76. This conclusion is antithetical to the facts. It is true that all shareholders suffered a common injury in that the value of their investment in ATS depreciated. Nonetheless, Notz suffered an additional injury that was unique to the minority shareholders. The

---

[4] Wisconsin is not alone. Other jurisdictions recognize that breaches of fiduciary duty resulting in unique harm to minority shareholders can give rise to direct suits:

> In general, actions for breach of fiduciary duties are to be brought in derivative suits. However, a breach of fiduciary duty alleged by minority shareholders against shareholders who control a majority of shares in a close corporation, and use their control to deprive minority shareholders of the benefits of their investment, may be brought as an individual action.

12B William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 5909 (perm. ed., rev. vol. 2000). Further,

> [W]here there is no question that plaintiffs are claiming an injury that was not suffered by all shareholders, but only by minority shareholders, that action is properly classified as [direct] rather than derivative.

*Id.* § 5908.

Smith Group who planned and executed these transactions received a net gain, but Notz suffered a net loss. Because Notz was squeezed out of the thermoplastics business that the Smith Group took for itself, he was "excluded from a fair participation in the fruits of the sale." *See S. Pac. Co.*, 250 U.S. at 488. Notz's injury was distinct from the "injury" to the controlling shareholder —unlike the defendants, Notz was denied continued participation in a thriving growth industry.

¶ 77. I conclude that Notz states a direct cause of action for breach of fiduciary duty arising out of the defendants' usurpation of a corporate opportunity. Based on the facts presented in Notz's amended complaint, the defendants breached their fiduciary duty to minority shareholders by using their position of trust to further their private interests. This breach caused Notz a unique injury.

## II

¶ 78. I also part ways with the majority because of its failure to articulate and apply a consistent analysis. I find no principled distinction justifying the majority's disparate treatment of the two breach of fiduciary duty claims.[5] Neither do the parties in this case. In his brief, Notz argued, "Candidly, a consistent policy should apply . . . . [T]here is no meaningful difference between the Smith Group using ATS funds for its own purposes and the Smith Group taking corporate opportunities and then 'selling' corporate assets to itself in an effort to squeeze out minority shareholders."

¶ 79. Nevertheless, having first determined that Notz did not suffer a unique injury when the Smith

---

[5] Notably, Notz's amended complaint did not distinguish between the claims. However, the court of appeals treated the claims separately.

Group usurped a corporate opportunity, the majority changes course. Even though all shareholders presumably suffered the same diminution of their stock value based on ATS's expenditure for due diligence, the majority concludes that this particular injury was primarily to the minority shareholders. It explains that the Smith Group "received a benefit at the expense of the minority shareholders" and "there was never any intention for the minority shareholder to benefit in any way from this due diligence expenditure[.]" Majority op., ¶¶ 4, 27.

¶ 80. When addressing the usurpation claim, the extrinsic benefit to the Smith Group was apparently irrelevant to the majority's analysis.[6] If this analysis is correct, then the injury caused by the Smith Group's decision to use ATS's funds to conduct due diligence was an injury primarily to the corporation as well, because extrinsic benefit is irrelevant and "all shareholders were affected equally" by the funds paid for due diligence. Instead of applying a consistent principle, however, the majority opinion carves out the due diligence expenditure paid by ATS and labels it a constructive dividend. See majority op., ¶ 4.

¶ 81. The term constructive dividend is inapt. Before this case, Wisconsin courts have not used the term "constructive dividend" outside of the context of tax statutes. *See, e.g., Wis. Dep't Rev. v. Sentry Fin.*

---

[6] The majority never states why, exactly, an exclusive benefit to officers, directors, and controlling shareholders is irrelevant to the analysis. The majority does imply that a shareholder-director's self-dealing does not transform an action that primarily injures the corporation into one that primarily injures a shareholder. *See* majority op., ¶ 22. Further, the majority quotes, apparently with approval, the circuit court's determination that "any ancillary benefit the Smith Group received from the transaction did not create a direct injury" to minority shareholders. *See* majority op., ¶ 11.

*Servs. Corp.*, 161 Wis. 2d 902, 469 N.W.2d 235 (Ct. App. 1991). The majority opinion fails to define the term here.

¶ 82. I am not sure what it means in the context of this case. Black's Law Dictionary, however, defines a constructive dividend as a "taxable benefit derived by a shareholder from the corporation even though the benefit was not designated a dividend." *Black's Law Dictionary* 492 (7th ed. 1999).

¶ 83. In *Jorgensen II,* the court of appeals did not use the term "constructive dividend" when it concluded that some shareholders were disproportionately paid directors' fees. *See* 246 Wis. 2d 614. In that case, however, "it was obvious" that the fees were "related to profits of the corporation" rather than salaries paid "as compensation for work done." *Id.,* ¶ 6. That is, the court concluded that these fees were in reality a share of the corporation's profits and should have been distributed evenly to all shareholders. It is unclear, however, if the directors' fees in *Jorgensen II* would have fit the Black's Law Dictionary definition of a constructive dividend.

¶ 84. In this case, however, the Smith Group did not receive anything resembling a dividend. First, the expenditure was a business expense, and the Smith Group could not be taxed based on ATS's expenditure for due diligence. Second, the money used for due diligence was not paid to the Smith Group. Instead, the due diligence funds would have been paid to various third-parties as compensation for their work evaluating whether ATS should purchase Dickten & Masch. Thus, it is incorrect to characterize the due diligence expenditure as a "constructive dividend" or a "dividend-like payment."

¶ 85. Stripped of the inapt term, the inconsistent analysis becomes apparent. The majority attempts to explain why the due diligence expenditure gives rise to a direct action: "The bottom line . . . is that there was never any intention for [Notz] to benefit in any way from this due diligence expenditure" because the Smith Group planned to freeze Notz out of a profitable growth industry. Majority op., ¶ 27. Put another way, the majority determines that the due diligence expenditure was an injury to Notz because the Smith Group put its own interest before Notz's interests, causing a harm unique to minority shareholders. Yet, this is the exact conduct underlying Notz's fiduciary duty claims, which the majority previously determined were derivative because the injury was to the corporation.[7]

¶ 86. The only true distinction I see between Notz's two claims is that a dollar value is more easily assigned to the claim for the due diligence expenditure. This is not a distinction that is relevant in determining whether the injury was primarily to the shareholder or to the corporation.

¶ 87. The majority analysis does not provide a coherent and consistent principle to explain why the due diligence claim gives rise to a direct action when the usurpation claim gives rise to only a derivative action. Ultimately, its analysis provides little guidance to either a shareholder asserting a claim or the party defending against it.

---

[7] The majority further distinguishes the two claims by stating that the facts underlying the fiduciary duty claim are more similar to *Rose,* and the facts underlying the claim for the due diligence expenditure are more similar to *Jorgensen II.* Majority op., ¶ 28. The "factual similarity" the majority points to does not serve as a substitute for a controlling legal principle.

¶ 88. I conclude that if Notz's allegations are true, the Smith Group's conduct was in breach of their fiduciary duties to Notz, causing the minority shareholders a unique injury. Allegedly, the Smith Group put its own self-interest ahead of the minority shareholders' interests when it decided that ATS, rather than the Smith Group, should fund the due diligence. Additionally, the Smith Group put its own self-interest ahead of the minority shareholders' interests when it cut out minority shareholders' participation in a thriving growth industry by causing ATS to pass on purchasing Dickten & Masch and by deciding to sell ATS's plastics division to itself. The minority shareholders were uniquely injured because they were denied continued participation in the thermoplastics industry.

¶ 89. In sum, based on the facts presented in the amended complaint, I conclude that Notz states a direct claim for breach of fiduciary duty arising out of the defendants' usurpation of a corporate opportunity, and that breach caused the minority shareholders a unique injury. Further, I conclude that the majority fails to articulate and apply a consistent analysis. There is no principled distinction justifying the majority's disparate treatment of the two breach of fiduciary duty claims. Accordingly, I concur in part and dissent in part.

¶ 90. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this concurrence in part and dissent in part.