COURT OF APPEALS
DECISION
DATED AND FILED

November 24, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP997**

Cir. Ct. No. **2018CV691**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

ESTATE OF STEPHEN O'BRYAN, BRENDAN TIM O'BRYAN, JOAN O'BRYAN HERRIOTT, MICHAEL O'BRYAN, STEPHEN F. O'BRYAN, JR., TERRENCE O'BRYAN, OISIN HERRIOTT, CONN HERRIOTT, FIONN HERRIOTT, SUSAN O'BRYAN, KATHY BRUCKS, MICHAEL BRUCKS, BRENDAN BRUCKS AND KEVIN BRUCKS,

　PLAINTIFFS-APPELLANTS,

　V.

DAVID L. O'BRYAN, THOMAS O'BRYAN, WILLIAM O'BRYAN, ROBERT O'BRYAN, DEBORAH O'BRYAN ALM AND LAKEWOOD FARMS, INC.,

　DEFENDANTS-RESPONDENTS.

---

　　　　APPEAL from an order of the circuit court for Waukesha County: WILLIAM DOMINA, Judge. *Affirmed*.

　　　　Before Gundrum, P.J., Neubauer and Reilly, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. The Estate of Stephen O'Bryan, Brendan Tim O'Bryan, Joan O'Bryan Herriott, and the remaining plaintiffs-appellants named in the caption above appeal from an order of the circuit court dismissing their derivative action against Lakewood Farms, Inc. (LFI) and against David L. O'Bryan, Thomas O'Bryan, and various other O'Bryan family members, all on LFI's board of directors.  After a three-day trial to the court and extensive posttrial briefing and other submissions, the court issued a written decision and order dismissing the action in its entirety.  We affirm.

## BACKGROUND

¶2    The parties stipulated to the following facts, as set forth in the circuit court's posttrial decision and order.  Leslie ("L.L.") O'Bryan and his wife, Faye O'Bryan, were the patriarch and matriarch of the O'Bryan family.  L.L. and Faye[1] had eight children, including defendant William O'Bryan and plaintiffs Michael "Mickey" O'Bryan, Joan O'Bryan Herriott, Susan O'Bryan, Kathy Brucks, and Stephen "Buddy" O'Bryan, deceased, whose estate is a plaintiff.  (Another of L.L. and Faye's children, Tom O'Bryan, is deceased.  Patrick O'Bryan, another child, is still living but is not a party to the lawsuit.)  The other plaintiffs and the other four defendants are grandchildren of L.L. and Faye.

---

[1] To avoid potential confusion arising from the fact that this litigation involves multiple family members with the same surname, we refer to the parties by their first names throughout the remainder of this opinion.

¶3 In the 1930s, L.L. and Faye purchased a large farm that is partially in Waukesha and partially in Walworth Counties which includes a large residence, other long-term rental houses, crop land, pasture, woods, many barns and out buildings, and a lake. L.L. died in 1970, but while he was alive, the property was a working farm that raised cattle. In 1973, Faye incorporated LFI and began gifting shares to her children, who each signed a restrictive stock agreement. Faye also retained a number of shares for herself. The articles of incorporation authorized the issuance of up to 50,000 common shares.

¶4 In January 1980, the corporation was recapitalized and there was an exchange of common stock for preferred stock. In 1990, a voting trust was created to vote the preferred shares in the corporation, and the votes of all 25,200 shares in the trust were to be decided by a majority vote of trustees. Faye gifted voting trust certificates to her children and grandchildren. The original five voting trustees were five of Faye's children: Kathy, Susan, Buddy, Mickey, and Joan.

¶5 From 1973 to 2010, LFI sold approximately half of its acreage, primarily to pay off loans and fund operating expenses. By 2010, it had approximately 1,200 noncontiguous acres left. LFI has not sold additional acreage since 2010. In 2010, LFI received a letter from the Wisconsin Department of Natural Resources ("DNR") expressing interest in purchasing most of LFI's real estate (except a noncontiguous parcel) for $10,180,000. Although LFI's Board of Directors voted to accept the DNR offer, when the matter was put to a shareholder vote, three of the then-current voting trustees, Buddy, Mickey, and Joan, voted against the transaction. As a result, the voting trust voted its shares against the transaction, and the motion failed.

¶6    Buddy subsequently purchased the common shares of Susan and Kathy, and both resigned their positions as voting trustees. They were replaced by successor trustees. In 2010, a new board of directors and officers was elected, and in 2012 the board included Mickey, Buddy, and Joan.

¶7    From 2015 to August 22, 2016, the officers and directors of LFI were Mickey, President and Director, and the individual defendants: his son David, Vice President and Director; William ("Bill"), Director; Thomas, Jr. ("Tommy") Director; Robert M., Director, and Deborah ("Debbie"), Secretary. Between the recapitalization in January 1980 and August 22, 2016, there were 3200 common shares and 25,200 preferred shares of LFI outstanding. Prior to August 22, 2016, no shareholder had paid anything either to Faye or LFI for any of his or her shares, and no shareholder had made any monetary investment in LFI.

¶8    LFI's net income for the years 2009 through 2015 was as follows: 2009: -$14,961.16; 2010: -$4,324.36; 2011: -$1,114.30; 2012: $170.64; 2013: $7,823.60; 2014: -$8,329.27; 2015: -$120.93.

¶9    The plaintiffs-appellants (collectively, the Estate) are all shareholders or preferred stock certificate holders of LFI. The individual defendants-respondents (collectively, the Directors) were the officers and directors of LFI when the action was filed and were officers and/or directors from at least August 22, 2016, to the time of filing.

¶10    The circuit court made several additional findings of fact after the trial. These include the following:

> 1.  This litigation really [began in] 2016 in an action filed by a smaller group of the current plaintiffs against the same defendants in Waukesha County Case No. 16-CV-1607, then assigned to the

4

> Honorable Kathryn Foster. The claims included counts for alleged breach of "fiduciary duty of care, and loyalty against director defendants", declaratory judgment voiding issuance of stock shares issued to the defendants, and a demand for temporary restraining order. Ultimately, Judge Foster granted the defendants' motion for summary judgment ....

> 2. No appeal from this earlier case was taken. Rather [the Estate,] the original plaintiffs along with other LFI shareholders[,] filed this action. The complaint bears the bolded title "**Shareholder Derivative Complaint**" and alleges claims for "Breach of Fiduciary Duty," "Unjust Enrichment," and "Gross Mismanagement."

> ….

> 4. No dispositive motion was filed by any party to this action[.]

> 5. The matter was tried to the Court over three days…. The parties were directed to submit post-trial briefing and proposed findings of fact and conclusions of law.

¶11　One of the main disputes before the circuit court at trial was whether a "written correspondence dated February 18, 2016[, ] … meet[s] the demand requirements of [WIS. STAT. § ]180.0742" (2019-20),[2] which sets forth the procedure that a corporate shareholder must take before bringing a derivative action against a corporation. The parties entered the 2016 letter into evidence at trial as a joint stipulated exhibit. The letter was written on behalf of individual shareholders Joan and Buddy and directed to then-board members, Mickey, William, Robert, David, and Tommy, with a copy sent to the other corporate shareholders. Among other things, the letter complained that the property was not

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

generating profits and asked that the then-directors "explore selling the farm." The Estate argued that the letter was sufficient to meet the statutorily required demand requirement and the Directors took the opposite position.

¶12    After considering the stipulated facts, the evidence adduced at trial, and the parties' legal arguments, the circuit court concluded that the 2016 letter did not meet the statutory requirements to bring a derivative action under any of the arguments presented and thus dismissed the Estate's complaint while at the same time denying the Directors' request to remove any of the voting trustees.  In its posttrial written decision, the court found:

> At most, the injury or claim complained about related to the shareholder value of certain individual shareholders, not the corporation.  Additionally, it appears that the February 18, 2016 correspondence fell short of "demanding" suitable action as it softened to merely request that then-existing board members merely "explore selling the farm" and "provide a report … identifying efforts to market the property."  The [c]ourt concludes that the shareholders upon whose behalf the February 18, 2016 correspondence was written didn't want the corporation or its assets sold for "maximum" value, but rather, they wanted to see what the "achievable" value was before deciding to further demand that the corporation or its assets be sold.  Thus, they fell short in demanding the kind of remedial action contemplated by the statute.  The February 18, 2016 letter also set a deadline well short of the 90-day time limit contemplated by [the statute].

The court further found that the letter failed because it was not addressed to those "board members in office at the time that the derivative action is commenced" and that the letter failed under the statute for other reasons as well, some of which we provide and discuss below.

¶13    Because it concluded that the 2016 correspondence did not meet the written demand requirements under the statute (meaning that the Estate could not

bring the 2018 derivative action), the circuit court did not reach the merits of the dispute. The Estate appeals.

¶14 We include additional facts below as necessary to our discussion.

## DISCUSSION

*Applicable Legal Standards*

¶15 Before bringing a derivative suit, a corporation's shareholders must make a written demand on the corporation. WIS. STAT. § 180.0742(1). The demand requirement states, in its entirety:

> **Demand.** No shareholder or beneficial owner may commence a derivative proceeding until all of the following occur:
>
> **(1)** A written demand is made upon the corporation to take suitable action.
>
> **(2)** Ninety days expire from the date on which the demand was made, unless the shareholder or beneficial owner is notified before the expiration of 90 days that the corporation has rejected the demand or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

Sec. 180.0742. The demand requirement operates as a "valuable screen of potential lawsuits, both by giving corporations a crack at resolving shareholder complaints before litigation and by giving courts more information on which to decide the merits of those suits that remain after demand." *Boland v. Engle*, 113 F.3d 706, 712 (7th Cir. 1997).

¶16 This case calls on us to review facts found by the circuit court following a trial and to apply WIS. STAT. § 180.0742 to those facts. We will

overturn factual findings in a case tried to the court only if they are clearly erroneous. WIS. STAT. § 805.17(2).

¶17    We consider here whether the 2016 letter discussed above constitutes a sufficient demand under WIS. STAT. § 180.0742, which requires us to apply that statute to the factual findings, which here are undisputed. "'Statutory interpretation and the application of a statute to a given set of facts are questions of law that we review independently, but benefiting from' the analysis of the circuit court." *Marx v. Morris*, 2019 WI 34, ¶21, 386 Wis. 2d 122, 925 N.W.2d 112 (citation omitted).

*The 2016 Letter Does Not Constitute a Sufficient Demand Pursuant to WIS. STAT. § 180.0742*

¶18    The Estate brought the claims at issue here in 2018 as a derivative action and asserts that the 2016 letter served as a written demand sufficient to satisfy WIS. STAT. § 180.0742.[3]  Specifically, the Estate argues that the court erred in finding that the letter raised only individual claims and fell short of demanding specific action and that the letter's request for action within fifteen days of its receipt and the fact that the board's makeup changed from the time the letter was sent to the time this action was filed made it legally insufficient.  Because each of

---

[3] In its appeal, the Estate takes issue only with the conclusion of the circuit court that the 2016 letter does not meet the statutory demand requirements.  At trial, the Estate offered two other arguments regarding whether it met the statutory demand requirements:  (1) a demand would have been futile and (2) the complaint in the 2016 lawsuit served as a statutory demand. The circuit court rejected both arguments.  The Estate has not argued either issue on appeal and these issues are therefore abandoned and not further addressed in this opinion. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) (An issue raised in the circuit court but not raised on appeal is deemed abandoned.).

the court's legal conclusions is intertwined with the undisputed facts related to the letter, we address them together below.

¶19    The Estate first argues that the circuit court erred in its conclusion that the 2016 letter fails as a demand under the statute because it fails to identify an injury to the corporation that the shareholders could assert on behalf of the corporation.    In a shareholder derivative action, "a shareholder 'assumes the mantle of the corporation itself to right wrongs committed by those temporarily in control' of the corporation." *Park Bank v. Westburg*, 2013 WI 57, ¶40, 348 Wis. 2d 409, 832 N.W.2d 539 (citation omitted).  A derivative action, serves "to prevent injustice to the corporation by allowing shareholders to enforce corporate interests, when the directors refuse to take corrective action." *Id.* (citation omitted).  The claims in a derivative action belong to the corporation rather than to individual complainants. *Id.*, ¶41.  This is consistent with generally accepted principles:

> The nature of the derivative proceeding is two-fold:  first, it is the equivalent of a suit by the shareholders to compel the corporation to sue; second, it is a suit by the corporation, asserted by the shareholder on its behalf, against those liable to it.  The corporation is the real party in interest and the shareholder is only a nominal plaintiff.  The substantive claim belongs to the corporation.

13 *Fletcher Cyclopedia of the Law of Corporations*, § 5941.10 (Sept. 2021) (footnotes omitted).

¶20    The circuit court found that the 2016 letter failed to identify wrongs to the corporation, explaining as follows:

> The very purpose of the demand requirement in a derivative action is to identify an injury to or claim of the corporation and to "demand" that such injury or claim be remedied through "suitable action."  At most, the injury or

> claim complained about related to the shareholder value of certain individual shareholders, not the corporation.

We agree with the circuit court's conclusion that nothing in the letter sets forth a demand that the corporation assert the rights of the corporation to bring claims against those liable to it. First, the letter begins, "On behalf of Joan Herriott and Stephen 'Buddy' O'Bryan, we request…." No other shareholder joins in the letter, which states that there were at least fifty shareholders, nor do these two shareholders purport to demand suitable remedial action by the corporation within ninety days to assert the rights of the corporation in order to avoid a derivative lawsuit.

¶21 As the circuit court aptly concluded, the letter sets forth Joan's and Buddy's request to explore selling the farm so that they can receive fair value for their stock. Specifically, the two shareholders complain that the corporation has failed to generate profits, and state that the "only way" to extract value from the "jointly owned asset" is to sell the asset, "the land it owns" (the farm) and distribute the proceeds to the shareholders. They contend that failure of the then-directors to pursue the sale, which is the "only action that will return value to the stockholders, is a breach of [the then-director's] duties" to act in the best interests of all the stockholders and wastes the corporate assets.

¶22 The letter fails to identify a *wrong* to the corporation that the writers *demand* it to remedy, instead making a "*request* that [the directors] pursue a sale of the Company … and distribute the proceeds as well as any other corporate assets to the shareholders." (Emphasis added.) The circuit court concluded that the letter fell short of demanding action, explaining that "[t]he correspondence contains some 'demand-like' language" in stating "we request that you pursue a sale of the Company (or, alternatively the land it owns) and distribute the proceeds

10

as well as any other corporate assets to the shareholders." The court further found, however, that the "language of the letter softens in demand" with its request that: "any buyout must be for a fair price…. Please let us know whether you will explore selling the farm. Please provide a report from the broker you retain identifying efforts to market the property and any offers…. We would appreciate hearing from you by March 4, 2016."

¶23 Thus, the letter simply sets forth a request that the then-directors explore a sale in the future. It is not a demand that the corporation pursue legal action for alleged past breach of fiduciary duty or waste; it is not a demand to enforce a corporate claim that the corporation could have, but has not, asserted against the then-directors in order to avoid legal action by the shareholders on its behalf within ninety days. We agree with the circuit court that the letter failed to meet the statutory requirements of demanding suitable remedial action on behalf of the corporation.

¶24 The Estate has not pointed to any legal authority supporting the contention that the two shareholders' request that the then-directors pursue a sale of the farm and distribute the proceeds to the shareholders amounts to a demand that the corporation promptly remedy *an injury giving rise to a claim* that the corporation has failed to assert. The Estate seeks to deflect this fundamental requirement, arguing that all the shareholders (and not just them) have been injured as a result of the corporation's failure to pursue a sale of the farm. However, it remains the case that a derivative claim is one in which the injury to the corporation is the primary injury, regardless whether there is secondary injury to the shareholders. *Notz v. Everett Smith Group, Ltd.*, 2009 WI 30, ¶20, 316 Wis. 2d 640, 764 N.W.2d 904; *Link v. Link*, No. 2018AP1715, unpublished slip op. ¶¶60-61 (WI App Nov. 5, 2019), *review denied*, 2019 WI 104, 389 Wis. 2d

242, 936 N.W.2d 824.[4]  Again, derivative suits seek to enforce a corporate right that the corporation has failed, was unable, or has refused to assert by court action.

¶25   Thus, as the circuit court correctly concluded, the letter fails to identify a meritorious cause of action that could be enforced by the corporation. *See Link*, No. 2018AP1715, ¶65 (explaining that "[t]he shareholder cannot bring a derivative proceeding unless there is a meritorious cause of action that could be enforced by the corporation" and that "one precondition for a shareholder's derivative claim is 'a valid claim on which the corporation could have sued.'" (citation omitted)).

¶26   That there is no identified meritorious claim that could be enforced by the corporation is underscored by the relief sought by the Estate.  Namely, it ultimately seeks a sale of the shares in the corporation, which are owned by the individual shareholders, not the corporation.  While the Estate contends that the directors could seek shareholder agreement after the then-directors pursue a sale, this argument merely underscores that there is no identified claim that the corporation has failed to assert.

¶27   To the extent that the request to sell the farm and distribute the proceeds and all other assets to the shareholders is based on a claim of oppressive conduct to the minority shareholders, this requires a direct action.  *See Reget v. Paige*, 2001 WI App 73, ¶23, 242 Wis. 2d 278, 626 N.W.2d 302 (a sale of corporate assets and distribution of all proceeds and assets in liquidation typically occurs if a claim for judicial dissolution based on oppressive conduct to minority

---

[4] *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored, unpublished opinions issued after July 1, 2009, for their persuasive value).

shareholder is granted). Dissolution based on oppressive conduct to minority shareholders is not a derivative claim. *Notz*, 316 Wis. 2d 640, ¶34 ("We begin by observing that a claim for judicial dissolution based on oppressive conduct, as here, is not a derivative claim."); *see also* **Read v. Read**, 205 Wis. 2d 558, 567, 556 N.W.2d 768 (Ct. App. 1996) ("It is hard to conceive of any way in which dissolution would be beneficial to the corporation in this case.").

¶28 Tellingly, the letter also raised the possibility of a "buyout" of the complaining shareholders' shares. That is a request for individual relief, not derivative relief. *See* **Reget**, 242 Wis. 2d 278, ¶14. Therefore, the alternative relief sought in the letter also fails to meet the statutory requirements of a written demand sufficient to bring a subsequent derivative action.

¶29 We further agree with the circuit court's finding that the fifteen-day response time provided by Joan and Buddy in the 2016 letter is statutorily insufficient because it "set a deadline well short of the [ninety]-day time limit contemplated by [WIS. STAT. § ]180.0742." As we explained in *Jorgensen v. Water Works, Inc.*, 218 Wis. 2d 761, 787-88, 582 N.W.2d 98 (Ct. App. 1998), where the purported demand letter sought a response within three days, "[t]he response time of seventy-two hours, in and of itself, is an indication that this is not a demand letter within the meaning of § 180.0742 which gives the corporation up to ninety days to take the 'suitable action' and still avoid suit." Similarly, here, given the fifteen-day deadline from the letter and the fact that the letter does not even mention § 180.0742, we conclude that it did not provide fair notice that the letter was intended as a statutory derivative demand.

¶30 Moreover, as the circuit court here explained, the 2016 letter is deficient at least in part because of to whom it is directed—namely, not a clear

13

demand explicitly directed to the corporation itself, nor even to the board members in place in 2018 when the derivative action was brought, but rather it is directed toward certain individuals who sat on the board in 2016. The statute itself is clear in its directive that "[a] written demand is made *upon the corporation* to take suitable action." WIS. STAT. § 180.0742(1) (emphasis added). The 2016 letter was not clearly directed toward LFI as a corporation, further evidenced by the fact that it was not made on board members in office at the time the derivative action was commenced. *See McCann v. McCann*, 61 P.3d 585, 591-92 (Idaho 2002); *see also Jorgensen*, 218 Wis. 2d at 786-87 (purported demand letter was "not addressed to the corporation but to the individual majority shareholders[,]" and it "proposes a resolution of disputes between the [letter writers] on the one hand and the majority shareholders on the other.") For these and the reasons we have already stated, we conclude that the 2016 letter fails to qualify as a sufficient statutory demand.

¶31 The Estate appears to ask us to conclude that a court is entitled to overlook the statutory requirements if the purported demand letter comes close enough to meeting the statutory elements. Specifically, it argues "that the purpose and language of the statute are satisfied by the February 18, 2016 letter," as such, we should ignore the flaws in the letter discussed above. We decline to overlook the clear intent of the legislature to require anyone attempting to bring a shareholder derivative action first meet the demand requirements clearly set forth in WIS. STAT. § 180.0742.[5] *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*,

---

[5] Along similar lines, the Estate asks us to adopt a test used in Virginia and North Carolina to determine whether a demand is sufficient under the statute. We decline to unnecessarily create a new test to apply in Wisconsin because we conclude that WIS. STAT. § 180.0742 clearly states the demand requirements that the legislature intended to impose on those seeking to bring a derivative action.

2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110 ("Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute. We assume that the legislature's intent is expressed in the statutory language.").

## CONCLUSION

¶32     For the foregoing reasons, we conclude that the circuit court did not err in dismissing the Estate's claims against the Directors. The 2016 letter from Joan and Buddy to the then-board members fails to meet the requirements set forth in WIS. STAT. § 180.0742 because it fails to identify a wrong to the corporation, fails to demand specific remedial action for the corporation to take, sets a deadline for a response well short of the ninety-day deadline required under § 180.0742(2), and is directed to the 2016 board members rather than to the board members when the derivative action was filed in 2018.[6]

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] Our decision as to the insufficiency of the 2016 letter is dispositive of this appeal and, therefore, we do not reach the merits of the Estate's claims or discuss the other issues raised by the parties. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").